JANUARY TERM, 1850. 7

MARNEY et al. vs. STATE, use of VANCE.

## MARNEY et al. vs. STATE, use of VANCE.

13  7
96a  ²201

1. A sheriff during his first term, made a sale of real estate, on credit, under the statute concerning partition. He was elected for a second term and gave a new bond: during the second term he collected the money and failed to pay it over.
Held, that the failure to account for the money was a breach of his first bond, and his securities in that bond are liable for the breach; that all the acts done by the sheriff in the matter during the second term, were only in completion of the duties incurred under the first bond.
2. The legislature may *enlarge the duties* of sheriff's during the term for which they are elected, and their securities are liable for the faithful performance of them.

### ERROR TO BOONE CIRCUIT COURT.

HAYDEN for plaintiff's in error, insist:

1. That by the terms of the bond sued on, the defendants only bound themselves for the faithful performance of certain duties, specified to be performed by the said sheriff, Hamilton, in the condition of their said bond, for the *term of two years*, and until his successor in office should be elected and qualified; and that as *such securities* they have a right to stand upon the *very terms* of their contract. Miller vs. Stuart, 9th Wheaton, 680; same cases, 5th Cond. Rep. U. S. 727; same principles, same book, page 720; U. S. vs, Kirkpatrick et al. (5th Cond. Rep. 733;) 2 Pick. Rep. 234–5, Boston Manufacturing Hat Company vs, Messenger et al.; 7 Cowen, 746, Gorham vs. Gale; 2 Saunders, 410, 411, 415, and the notes therein, Lord Arlington vs- Merrick; 3 Wilson, 530, Wright vs. Russell, 2nd. Wm. Blackson, 934; 1 Strange, 227, African Co. vs. Mason; 1 Tenn. Rep. 287, Barker vs. Barker; 15 Wend. 623, the people vs. Ring; 11 Mo. Rep. 585, Warner & Cornwall vs. State, use of Wilkins; 4 Hen. & Munford, 208, Fairfax vs. Commonwealth, 6 Munford Rep. 81, 82, Munford vs. Rice & others.

2. That by the terms of the bond sued on, the defendants, *as securities* of Hamilton, became bound for the faithful performance of the duties of sheriff of Boone county, as specified in the condition of the bond, for the term of two years, and until his successor should be elected and qualified; and that as Hamilton was duly elected and qualified as *his own successor in the office*, in the year 1842, he thereby ceased to be sheriff under and by virtue of his *first election* and first term. That the very fact of his *re-election* and *qualification as sheriff* for the second term, revokes and puts an end to *all* his official powers under his first appointment, and is evidence of his *abandonment* of every claim of power and authority to act as sheriff under his first commission, and *conclusively negatives* the idea or presumption that he either intended to perform, or that he *did perform in fact any act as sheriff*, within the latter term, under the *lifeless* powers of the first. But on the contrary, his report of his acts shows that they were performed by him as *then sheriff* of the county, and *as such treated and confirmed by the court and parties*.

3. That the bond sued on shows that the defendants became bound, only for the payment of such money as the sheriff should collect and not pay over. *as sheriff during* the two years and until his successor in office was qualified; and they insist, *as such securities*, that they have a right to stand upon the very terms of their contract, and therefore are not bound to pay the plaintiff the whole or any part of the money sued for in this action, because the evidence, as preserved in the bill of exceptions shows first, that no part of the money demanded became

due until after the expiration of the first term ; and therefore he, Hamilton, had no official *power to collect it* during the first term ; and second, if he had had the official power to collect it under his *first commission*, he did not collect the same, or any part thereof, until the years 1843 and 1844, which was during the second term, and collected by him as their sheriff of Boone county, and that therefore the default or breach by *the sheriff* was of the condition of the *second bond*, and after the discharge, by lapse of time, of the defendants from their liability under the *first bond*. That the second set of securities are therefore bound, if any securities be bound, *by their bond*, which would not be the case if the defendants were bound in law therefor, under *their bond*. See 15 Wend. 623, the people vs. Ring; 11 Mo. Rep. 585, Warner & Cornwall, vs. the State, to the use of Wilkins. The last set of securities are by the terms of their bond, bound for a faithful performance of all the *official acts* of their principal; and as all the acts of Hamilton, done in the premises, are shown *by the record, and by his own written reports and certificates*, to be done by him in the name of his office, and so recognised by the parties interested, they must be considered as done under the bond in force, when so done.

4. There is no evidence in the record, conducing to show that Hamilton, *at any time*, converted the money that was paid him for the lots in the years 1843 & 1844, to his own use, or that the same was demanded of him in his life time, or of his administrator since his death, if he had any, nor is there any evidence that he failed or neglected to make a good, legal return or report of his doings in the premises, as sheriff, during his continuance in office. That therefore it was the duty of the plaintiff, by proof to show that Hamilton did violate the condition of his bond, by refusing to pay the money (being a trustee) upon his being demanded so to do by the plaintiff, Vance, or to prove that he, Hamilton had converted the money to his *own use or otherwise;* and in this case, no such evidence was either offered or given on the part of the plaintiff. That a demand of the money of Captain Kirtley, one of his securities, *now sued*, was not sufficient, (if the *absurdity* can be indulged that he and his securities are liable in any event.) There was and could be no presumption in law arising out of the relation existing between Hamilton, *as sheriff* and Kirtley as *his security*, that Kirtley was the *deputy* or the holder of the moneys, collected by the sheriff, and a demand of Kirtley and his non-compliance therewith, furnishes *no presumption* of any default by the sheriff, or other breach of the condition of his bond, respecting the money demanded in this suit, and therefore for aught appearing to the contrary, the sheriff died possessed of the money, and was only prevented from paying it, by the act of God, which would and did excuse the sheriff and also his securities upon a charge, as this suit is of a violation of the *condition* of the bond, which condition only requires in its terms a *faithful performance* thereof by the sheriff, which ex vi termini implies that by the *wilful act*, or the wilful omission of duty of the sheriff, the duties thereby specified shall not be violated by him. The onus was and is upon the plaintiff, and not upon the defendants to establish the issues made by the plaintiff in his assignment of the breaches of the condition of the bond. If, therefore, a demand were necessary to be made of the money claimed, of any person, it should have been made of the party in whose possession, by presumption of law, it was at the time of the demand made, and it should appear that the person so possessed of it refused to comply with such demand, and in this case neither of these essential facts is shown to exist. Therefore, I conclude this point by saying, that the plaintiff hath wholly failed to prove this point of his case, which *he deemed* as I *deem* absolutely necessary to entitle him to judgment, going upon the hypothesis (which we deny the truth of) that the bond sued on embraces within its terms or within its meaning, the supposed breaches of duty, specified in the declaration, as having been violated by the sheriff.

5. That the court erred in declaring the law of the case to be as moved by the instructions asked for by the plaintiff, as well as in refusing to declare it to be as affirmed by the motion of the defendants ; and also for not setting aside the finding of the court, and in refusing a new trial for the reasons assigned by the defendants in their said motion therefor.

LEONARD for defendant, insists :

1. The authority to make the sale, given to the sheriff by the statute, is *ex vi termini* not only an authority to agree on the terms, but also to receive the purchase money and make the conveyance.  Statutes of 1838 and 1839, "Partition," p. 89, 90; also statutes of 1841 and 1842, page 108; 22 Peck. Rep. page 92.

2. The sale being an indivisible thing, he who begins must end it, although his office may have expired.  Towble vs. Rayberg, 4 Hammond's Ohio R. 45; State vs. Hamilton, 1 Han. R. 153; 2 vol. U S. Digest, page 782.

3. Hamilton's first securities, those who were bound for him when he commenced the act, are bound for its due completion.  State use of Robey vs. Turner, 8 Gill and John. 125.

4. It was the duty of the officer, after receiving the purchase money, to report that fact to the court and have the money there to be distributed ; and his omission to do so, is not only evidence of a conversion, but is itself a violation of his official duty.

Judge BIRCH delivered the opinion of the court.

Vance, using the name of the State, sued Marney and others upon the official bond of Hamilton as sheriff of Boone county.   It appears that on the 13th of August, 1841, a judgment in partition was rendered in the Boone circuit court, and that at the December term of the same year, an order was made directing the sheriff to sell the lands at the April term then next ensuing, upon a credit of 6, 12 and 18 months, and to make conveyances upon the payment of the purchase money. The sheriff made the sale accordingly, during his first term, but collected the money, in part, and reported his proceedings during his second term.   He collected the balance of the money after the expiration of his second term of office, receipting for it, and transacting the business throughout as sheriff.

The declaration contains two breaches : first, that the sheriff made the conveyance without receiving the purchase money; and secondly, that he collected the money and neglected to have it in court to be paid over to the parties, and had refused to pay Vance his portion, and had converted it to his own use.   The plaintiff had judgment for his distributive share of the proceeds of the sale ; to reverse which, the defendants who were securities on the first bond of the sheriff, have brought the case to this court.

Was it the *duty* of the sheriff, in virtue of his *first* election, to complete the business of collecting the money and transfering the land ? If so, he did not "faithfully discharge all duties imposed on him by his office," and his securities are liable for his default.   The mere manner in which he subsequently signed his name, in conducting and winding

up the business, can scarcely illustrate, much less affect the merits of the case.

The views which have occurred to us, upon reference to our various statutes concerning partition, render it unnecessary to choose between, or attempt to reconcile the apparently conflicting authorities to which we have been referred upon the general subject. By act of the 15th of February, 1841, (covered by the bond sued on, and passed before the order of the court alluded to,) the powers and duties previously entrusted to and performed by commissioners in partition, in respect to the sale of the land and all subsequent proceedings, (including the payment of distributive shares) were devolved upon the sheriffs of counties. We throw out of view, in this connection, the additional declaration of the legislature respecting the liability of securities, "in the same manner as in cases collected on execution," such provision being merely cumulative in its application to the facts of this case.

By the second section of the act, the sheriff is authorised to complete such business in partition as he may have commenced during his term of office, including the collection and disbursement of the money, unless the circuit court, by order, direct otherwise, which is not pretended in this case. It became, then, the duty of the sheriff who commenced, to conclude the business, no other person having authority to do so ; and the question involved in this suit is in no wise affected by the fact that he was his own successor, and gave a new bond with different securities. He must be presumed to have executed receipts, &c., as "sheriff" under his first term, for he had no authority to act in the premises in any other capacity.

The third section provides a proper compensation for these services, and to deny the authority of the legislature, thus to enlarge the duties of the sheriff, under peril of having thereby no security for its faithful performance, need only to be reflected upon to be abandoned. The recognition of such a principle, having scarce an imaginable limit to its ramification, would virtually close the statute book of the State against all reforms which might concern the receipt and disbursement of money, by the countless officers and fiduciaries of the State, public and private. Such a proposition, therefore, although lying at the root of the only argument which can be adduced against the exposition of the law, as given by the circuit court, requires no refutation, and the judgment of the circuit court is therefore affirmed.