UNITED STATES *v.* SINGER.

1. The 20th section of the act of Congress of July 20th, 1868, is as follows:

"That on the receipt of the distiller's first return in each month, the assessor shall inquire and determine whether said distiller has accounted in his returns for the preceding month for all the spirits produced by him; and to determine the quantity of spirits thus to be accounted for, the whole quantity of materials used for the production of spirits shall be ascertained; and forty-five gallons of mash or beer brewed or fermented from grain shall represent not less than one bushel of grain, and seven gallons of mash or beer brewed or fermented from molasses shall represent not less than one gallon of molasses.   In case the return of the distiller shall have been less than the quantity thus ascertained, the distiller or other person liable shall be assessed for such deficiency at the rate of 50 cents for every proof gallon, together with the special tax of $4 for every cask of forty proof gallons, and the collector shall proceed to collect the same as in cases of other assessments for deficiencies; but in no case shall the quantity of spirits returned by the distiller, together with the quantity so assessed, be for a less quantity of spirits than eighty per centum of the producing capacity of the distillery, as estimated under the provisions of this act."

*Held*, that the meaning of this section is, that in no case shall the distiller be assessed for a less amount of spirits than 80 per cent. of the producing capacity of his distillery, and if the spirits actually produced by him exceed this 80 per cent. he shall also be assessed upon the excess.

2. The law is constitutional.   The tax imposed upon the distiller is in the nature of an excise, and the only limitation upon the power of Congress in the imposition of taxes of this character is that they shall be "uniform throughout the United States."   The tax here is uniform in its

---

* Howard *v.* Odell, 1 Allen, 85; Myers *v.* Willis, 17 C. B. 77; 18 Id. 886.

operation; that is, it is assessed equally upon all manufacturers of spirits wherever they are. The law establishes one rule for all distillers.

3. The 15th section of the act of Congress of July 20th, 1868, required every distiller to provide a warehouse for the storage of spirits manufactured by him, and declared that such warehouse, when approved by the Commissioner of Internal Revenue, on report of the collector, should be a bonded warehouse of the United States, and should be under the direction and control of the collector of the district, and in charge of the internal revenue storekeeper assigned thereto by the commissioner. The 52d section of the same act enacted that the compensation of these storekeepers should be determined by the commissioner and be paid by the United States. The distillers in this case provided the warehouse directed, and the Commissioner of Internal Revenue assigned a storekeeper to take charge of it at a compensation of $5 a day, and he remained in charge of the warehouse from the 4th to the 25th of March, 1869, inclusive, for which service he was entitled to $110, and was paid that amount by the United States. Subsequently to this, and on the 29th of March, 1869, Congress passed a certain joint resolution to which was annexed a proviso that, after the passage of that act, the proprietors of all internal revenue bonded warehouses should "reimburse to the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses," and that the same should be paid into the treasury and accounted for like other public moneys; *Held,* that the official bond of the distillers and their sureties, in this case executed in January, 1869, does not bind them to make reimbursement of this money expended by the United States before the joint resolution was passed: 1st, because the joint resolution only contemplates the reimbursement of expenses and salary paid after its passage; and, 2d, because the reimbursement to the United States of moneys paid by them to their own officers or agents, in pursuance of a law in existence when the bond was executed, is not a duty so connected with, or naturally belonging to, the business of a distiller as to be within the reasonable contemplation of the parties to the bond at the time of its execution.

4. The official bond of parties covers not merely duties imposed by existing law, but duties belonging to and naturally connected with their office or business imposed by subsequent law, but the new duties must have some relation to or connection with such office or business, and not be disconnected from and foreign to both.

5. This case distinguished from that of *United States* v. *Powell* (14 Wallace, 493), in this, that there the moneys were expended by the United States, and one of the bonds in suit was executed, after the passage of the joint resolution.

Error to the Circuit Court for the Northern District of Illinois; the case being this:

The 20th section of the act of July 20th, 1868, entitled

" An act imposing taxes on distilled spirits and tobacco, and for other purposes,"* enacts:

"That on the receipt of the distiller's first return in each month, the assessor shall inquire and determine whether said distiller has accounted in his returns for the preceding month for all the spirits produced by him; and to determine the quantity of spirits thus to be accounted for, the whole quantity of materials used for the production of spirits shall be ascertained; and forty-five gallons of mash or beer brewed or fermented from grain shall represent not less than one bushel of grain, and seven gallons of mash or beer brewed or fermented from molasses shall represent not less than one gallon of molasses. In case the return of the distiller shall have been less than the quantity thus ascertained, the distiller or other person liable shall be assessed for such deficiency at the rate of fifty cents for every proof gallon, together with the special tax of four dollars for every cask of forty proof gallons, and the collector shall proceed to collect the same as in cases of other assessments for deficiencies; but in no case shall the quantity of spirits returned by the distiller, together with the quantity so assessed, be for a less quantity of spirits than eighty per centum of the producing capacity of the distillery as estimated under the provisions of this act."

The 15th section of the same act required every distiller to provide a warehouse for the storage of spirits manufactured by him, and declared that such warehouse, when approved by the Commissioner of Internal Revenue, on report of the collector, should be a bonded warehouse of the United States, and should be under the direction and control of the collector of the district, and in charge of the internal revenue storekeeper assigned thereto by the commissioner. The 52d section of the same act enacted that the compensation of these storekeepers should be determined by the commissioner and *be paid by the United States.* On the 29th of March, 1869, Congress passed a joint resolution,† supplying omissions in the enrolment of certain appropriation acts, to which was annexed a proviso that, after the

---

* 15 Stat. at Large, 133, 134.                   † 16 Ib. 52.

passage of the resolution, the proprietors of all internal revenue bonded warehouses should "*reimburse* to the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses," and that the same should be paid into the treasury and accounted for like other public moneys.

In this state of the statutory law the United States brought suit against Singer and Bickerdike as principals, and certain other persons as sureties, on a distiller's bond which all the said parties had signed, and whereby they covenanted that the principals should "in all respects, faithfully comply with the provisions of the law in relation to the duties and business of distillers, and pay all penalties incurred or fines imposed upon them for violation of any of the said provisions."

The government assigned as a breach that the said Singer and Bickerdike, "during the month of November, 1868, manufactured spirits at their distillery, and made return for that month to the assessor of the first collection district of the State of Illinois, of spirits so manufactured, and the quantity of spirits so returned was less than 80 per cent. of the producing capacity of said distillery, as estimated under the provisions of the internal revenue law, and, that thereupon, the said assessor, to wit, on the 10th day of February, A.D. 1869, proceeded to make an assessment against the said Singer and Bickerdike, for the deficiency in said return, which assessment, amounting to $26,089.60, the said Singer and Bickerdike had refused to pay."

Plea, that the said Singer and Bickerdike, "before the commencement of this suit, fully paid and satisfied all assessments lawfully made against them *for spirits produced at their said distillery since the date of the said bond.*"

The plaintiffs demurred, and thus raised the first point in the case.

By a second count the plaintiffs assigned as another breach of the bond that "one C. W. Davis, an internal revenue storekeeper, appointed by the Secretary of the Treasury of the United States, and assigned by the Commissioner of In-

ternal Revenue to the distillery warehouse of which said Singer and Bickerdike were proprietors, established by law, in connection with the said distillery, at a salary of $5 per day, had charge, as such storekeeper, of the said warehouse from the 4th to the 25th days, inclusive, of March, A.D. 1869, and became thereby entitled to the sum of $110 for the said services; which said last-named sum had been paid by the United States to the said Davis for his said services, and that it thereupon became the duty of Singer and Bickerdike, as such distillers and proprietors, to reimburse to the United States said sum; yet that though often requested, they had never paid it or any part of it."

To this count also the defendants demurred.

Judgment was given by the Circuit Court of the United States for the defendants, and this writ of error was brought, the United States assigning as error:

1st. That by the already-quoted 20th section of the act of July 20th, 1868, the defendants, Singer and Bickerdike, were liable to be taxed for a quantity of spirits equal to 80 per cent. of the producing capacity of their distillery, whether the amount actually manufactured equalled that quantity or not.

2d. That by the resolution of March 29th, 1869, the defendants were bound to repay to the United States what the latter had paid to Davis as storekeeper.

*Messrs. Edward Roby, and H. S. Monroe, in support of the rulings below:*

I. The demurrer admits that Singer and Bickerdike have paid the tax upon every gallon of spirits manufactured by them, and the question thus is, whether under the law they can be compelled to pay a tax upon *what they have not manufactured, upon what in fact never had an existence.* Now

1. Congress cannot have intended, in this enactment, to enable the government to collect a tax upon property not existing within its jurisdiction, or to compel the citizen to pay a tax upon what he has not produced, and on what perhaps he could not produce. The object was to enable the

officers of the government to assess and collect a tax upon what should be actually produced, and *upon that alone*. And a careful inspection of the first nineteen and the last eighty-nine sections of this law will show that this was the real and only object.

2. If the construction above given to this section is not the true one, then it is void.   1st. Because Congress cannot levy a tax on nothing.   2d. Because the tax it seeks to levy is not and cannot be uniform.   3d. Because a deficiency is not a tax, but is a penalty, and cannot be enforced by an action upon the distiller's bond; and, 4th. Because the legislature attempted the exercise of a judicial power in excess of legislative authority.

1st. Congress cannot levy a tax upon nothing.   It is admitted that this tax of $26,089.60 was levied upon nothing; for confessedly the spirits, upon which the assessor sought to impose it, never had an existence.   Now a *tax* cannot exist without a subject.   It cannot be imposed except upon person or property.   Congress can no more tax nothing than it can create the subject of taxation out of nothing.   This is not a tax upon the person.   It is not a tax upon property, and it does not come within any legal definition of duty, impost, or excise.

2d. The Constitution requires that taxes shall be uniform. If the construction set up by the government is the true one, this is not and cannot be uniform.   The tax on spirits is (say) 50 cents per gallon and $4 per barrel.   Had the distiller in this case produced the full amount of 20 per cent. more than the estimated capacity of his distillery, his tax would have been 50 cents a gallon and $4 per barrel.   He made say only 50 per cent. of the estimated capacity, and the tax he had to pay is $1 on every gallon and $8 on every barrel of what he actually manufactures.   This result inevitably follows, if the imposition is considered as a tax.

3d. This imposition upon a deficiency is a penalty and not a tax within the meaning of the law.   Congress, in effect says to the distiller, " You have a distillery here, with which, by proper care and skill, you ought to make say 2000

gallons of spirits per day. You can certainly make 1600 gallons. If you do not make but 1000 gallons, you shall be punished for your want of skill, and shall pay $300 on account of this 600 gallons you ought to have made, and $4 per barrel besides." Is it not the same as though Congress had in terms imposed a penalty upon the distiller who should not succeed in making 80 per cent. of what his distillery was, in the opinion of the officers of the government, capable of producing? If it is a penalty, it cannot be enforced against the distiller in this action. It can only be enforced, if at all, by information or some proper proceeding for its collection.

But can it, as a penalty or a tax, be sustained? Can Congress impose a penalty upon the citizen because he has not the same skill and knowledge that others have? Can it, by legislation, punish the citizen because he is unable to conduct his business with the same success that others do? If so, it has the power to destroy every interest of business in the nation, because it is safe to say that while one man may make large amounts yearly in carrying on his business, nine in the same business may make but little more than a living.

4th. If the section is to receive the construction set up by the government the legislature will exercise judicial power; for the assessor will have power to decide upon the rights of distillers without an opportunity on their part to be heard. The property of the citizen is forfeited and transferred without trial and judgment in the courts.

II. The second question arises upon the demurrer to the second count of the declaration, and is whether the defendants are liable under the bond sued on for the payment of the storekeeper's wages, amounting to $110.

We do not propose to discuss the question as to whether Singer and Bickerdike, in some other form of action, might not be liable for this sum, though it seems to us they would not. Our position, which is sufficient for this case, is that these sureties cannot by any possibility be held liable for it; that they cannot by an *ex post facto* resolution of Congress,

operating upon the condition of this bond executed before the date of this resolution, be held liable under it.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, for the United States, contra.*

Mr. Justice FIELD delivered the opinion of the court.

Two questions are presented by the counsel of the government for our consideration in this case. One relates to the construction which should be given to the twentieth section of the act of July 20th, 1868, imposing taxes on distilled spirits; and the other relates to the liability of the defendants on the bond in suit to reimburse the United States the amount paid by them to the storekeeper placed in charge of the warehouse of the distillers.

Upon the construction which should be given to the twentieth section of the act of July, 1868, there appears to have been some conflict of opinion among different Circuit judges. The real or supposed hardship in particular cases of imposing a tax upon an amount of spirits equal to eighty per cent. of the producing capacity of the distillery, where a less quantity has been in fact manufactured by the distiller, has undoubtedly had much to do in inducing a construction leading to a different result. But the hardship of the operation of particular provisions of a statute has properly no place for consideration where the language is unambiguous and the legislative intent is clear. And reading the section in question by itself there does not appear to us to be any ambiguity in its language, or any doubt as to its meaning. Its meaning is that in no case shall the distiller be assessed for a less amount of spirits than eighty per cent. of the producing capacity of his distillery, and if the spirits actually produced by him exceed this eighty per cent., he shall also be assessed upon the excess.

The other sections of the act, instead of conflicting, agree with this construction. There are running through the act two classes of provisions, one of which looks to the ascertainment of the quantity of spirits distilled, and the other to

the ascertainment of the producing capacity of the distillery. Thus the first section has reference to the spirits actually produced, and provides for the tax thereon. The fifteenth section compels every distiller to provide a warehouse, to be situated on and constitute part of his distillery premises, to be used only for the storage of distilled spirits of his own manufacture. The nineteenth section requires the distiller to make daily entries in books, kept for that purpose, of the grain and other materials used in the manufacture of spirits, and to render a sworn account three times each month of the number of gallons produced by him and placed in his warehouse. And the twentieth section makes it the duty of the assessor to inquire into and determine whether the distiller has accounted in his returns for all the spirits produced by him. These provisions are intended to secure the ascertainment of the quantity actually manufactured by the distiller. On the other hand, the ninth section provides "that every distiller, or person intending to engage in the business of distilling, shall previous to the approval of his bond cause to be made, under the direction of the assessor of the district, an accurate plan and description, in triplicate, of the distillery and distilling apparatus, distinctly showing the location of every still, boiler, doubler, worm-tub, and receiving cistern, the course and construction of all fixed pipes used, or to be used in the distillery, and of every branch thereof, and of every cock or joint thereof, and of every valve therein, together with every place, vessel, tub, or utensil, from and to which any such pipe shall lead, or with which it communicates;" and also showing "the number and location, and cubic contents of every still, mash tub, and fermenting tub, together with the cubic contents of every receiving cistern, and the color of each fixed pipe." One copy of the plan and description is required to be kept displayed in some conspicuous place in the distillery, one is to be kept by the assessor, and one to be transmitted to the Commissioner of Internal Revenue. Their accuracy is to be verified by the assessor, the draughtsman, and distiller, and no alteration in the distillery can afterwards be made with-

out the consent of the assessor, and any alteration made must be shown on the original, or by a supplemental plan and description, which is to be preserved in the same manner as the original. The tenth section requires a survey to be made by the assessor, with the aid of a skilful and competent person to be designated by the Commissioner of Internal Revenue, of every distillery used, and its true producing capacity estimated and determined, and reports of the same to be made in triplicate, one to be furnished to the distiller, one to be retained by the assessor, and one to be transmitted to the Commissioner of Internal Revenue. These several provisions are intended to secure information as to the producing capacity of the distillery; and then we have the concluding clause of the section under consideration, that in no case shall the quantity returned by the distiller, with the quantity assessed as deficit, be less than eighty per cent. of such capacity.

The system thus adopted was designed to prevent the secret production of spirits and consequent evasion of the government tax. And it seems well suited to accomplish this purpose; it at least reduces the limits within which fraud can be practiced to twenty per cent. of the capacity of the distillery. In view of the enormous frauds previously practiced upon the government in rendering accounts, this system cannot be justly charged with unnecessary harshness. Every one is advised in advance of the amount he will be required to pay if he enters into the business of distilling spirits, and every distiller must know the producing capacity of his distillery. If he fail under these circumstances to produce the amount for which by the law he will in any event be taxed if he undertake to distil at all, he is not entitled to much consideration.

It is suggested that as the distiller is required to make a return of the spirits actually manufactured by him under oath, the provision for a return of an amount equal to eighty per cent. of the producing capacity of the distillery cannot be complied with where a less amount has been produced. But we do not perceive any difficulty in this respect, or any

difficulty in giving effect to both provisions. The distiller should, as required, return under oath the true amount produced by him, and where this is less than the eighty per cent. he should add the difference, so as to obtain the amount for which the assessment is to be made. He can state in his return both the actual product of his distillery and the deficiency between that and the assessable amount.

The law is not in our judgment subject to any constitutional objection. The tax imposed upon the distiller is in the nature of an excise, and the only limitation upon the power of Congress in the imposition of taxes of this character is that they shall be "uniform throughout the United States." The tax here is uniform in its operation; that is, it is assessed equally upon all manufacturers of spirits wherever they are. The law does not establish one rule for one distiller and a different rule for another, but the same rule for all alike.

It follows from these views that the court below erred in overruling the demurrer of the plaintiffs to the third amended plea of the defendants, which raised the question we have considered as to the proper construction of the twentieth section of the act of July, 1868.

Upon the second question presented, which relates to the liability of the defendants on the bond in suit to reimburse the United States the amount paid by them to the storekeeper placed in charge of the warehouse of the distillers, our judgment is with the defendants. The bond in suit was executed in January, 1869. The fifteenth section of the act of Congress of July 20th, 1868, then in force, required every distiller to provide a warehouse for the storage of spirits manufactured by him, and declared that such warehouse, when approved by the Commissioner of Internal Revenue, on report of the collector, should be a bonded warehouse of the United States, and should be under the direction and control of the collector of the district, and in charge of the internal revenue storekeeper assigned thereto by the commissioner. The fifty-second section of the same act enacted

that the compensation of these storekeepers should be determined by the commissioner and be paid by the United States. The distillers in this case provided the warehouse directed, and the Commissioner of Internal Revenue assigned a storekeeper to take charge of it at a compensation of five dollars a day, and he remained in charge of the warehouse from the 4th to the 25th of March, 1869, inclusive, for which service he was entitled to one hundred and ten dollars, and was paid that amount by the United States. Subsequently to this, and on the 29th of March, 1869, Congress passed a joint resolution supplying omissions in the enrolment of certain appropriation acts, to which was annexed a proviso that, after the passage of the resolution, the proprietors of all internal revenue bonded warehouses should "reimburse to the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses," and that the same should be paid into the treasury and accounted for like other public moneys. The question is whether the official bond of the distillers and their sureties in this case binds them to make reimbursement of this money expended by the United States before the joint resolution was passed. We are clear that this question must be answered in the negative and on two grounds: 1st, because the joint resolution only contemplates, in our judgment, the reimbursement of expenses and salary paid after its passage; and, 2d, because if that be not the true construction of the resolution, the reimbursement to the United States of moneys paid by them to their own officers or agents, in pursuance of a law in existence when the bond was executed, is not a duty so connected with, or naturally belonging to, the business of a distiller as to be within the reasonable contemplation of the parties to the bond at the time of its execution. The official bond of parties undoubtedly covers not merely duties imposed by existing law, but duties belonging to, and naturally connected with their office or business imposed by subsequent law. But the new duties should have some relation to or connection with such office or business, and not be disconnected from and foreign to

both.  It would be extending the liabilities of obligors on such bonds beyond principle and precedent to hold them responsible for the reimbursement of moneys paid by government to its own officers or agents, because, subsequent to their payment, government declares that such reimbursement shall be made.

This case is distinguished from that of *United States* v. *Powell*, decided at the last term.*  There the moneys were expended by the United States, and one of the bonds in suit was executed, after the passage of the joint resolution.

It follows from these views that the ruling of the court below in sustaining the demurrer of the defendants to the second count of the declaration was correct.

JUDGMENT REVERSED, and the cause REMANDED FOR FURTHER PROCEEDINGS, with leave to the defendants to plead anew to the first count of the declaration.

NOTE.—At the same time, and in a similar way with the preceding case, was adjudged the case of *United States* v. *Van Buskirk*, in which the same points arose as in *United States* v. *Singer.*