### THE UNITED STATES *v.* McCARTNEY and others.

*(Circuit Court, D. Massachusetts.   January 16, 1880.)*

COLLECTION OF INTERNAL REVENUE—OFFICIAL BOND—SUBSEQUENT LEGISLATION.—The official bond of a collector of internal revenue is applicable to the payment of certain store-keepers, under an act of congress providing for the appointment and payment of such store-keepers, enacted subsequently to the execution of such bond.

This action was prosecuted against the sureties upon an official bond; the principal was named as a defendant, but was absent from the district and was not served with process.   In June, 1866, McCartney was collector of internal revenue for the third collection district of Massachusetts, and was duly directed by the secretary of the treasury to act as disbursing agent for that district, in accordance with section 4 of the act of March 3, 1865, (13 Stats. 483,) and gave the bond in suit, which recites McCartney's position as collector, and that the secretary has directed him to act as disbursing agent to pay the lawful expenses incident to the various acts relating to the assessment and collection of the internal revenues; and is conditioned that McCartney, collector as aforesaid, shall faithfully perform his duties as such disbursing agent, and shall properly account for and pay over all moneys that may come into his hands as such disbursing agent.

The course of business was for McCartney to make requisitions for the sums which he expected to need, and for the department to send drafts for the amounts, or so much as they thought necessary, which drafts were deposited by McCartney, who drew checks to pay the several expenses, which, before the passage of the act of 1868, presently to be men-

tioned, consisted of his own commissions and his salary, and that of the assessors, assistant assessors and clerks, and the general expenses of his office.

It appeared, by duly verified transcripts from the books of the treasury department, that McCartney received drafts monthly from the government on this disbursing account, and rendered monthly returns from June, 1866, to the end of March, 1869. He went out of office May, 1, 1869, and it did not appear that he had either drawn or paid out any moneys during the month of April, and there was some evidence that he had done neither. A balance of $7,155.17 appeared to be left in his hands by his latest return, from which had been deducted by the department his compensation for April, and some other allowances, leaving apparently due the sum now demanded, $3,545.92.

The act of July 20, 1868, (15 Stats. 145,) provided for the appointment of store-keepers, by the secretary of the treasury at a compensation to be fixed by the commissioner of internal revenue, not exceeding five dollars a day, and, by the papers in the case, it appeared that McCartney claimed credit for payments to such store-keepers amounting in all to $3,-572.57, and that the department had allowed him on that account $3,293.99. This was all the evidence tending to show that McCartney had been required, as such disbursing agent, to pay the fees of store-keepers under the act of 1868.

The plaintiffs offered to put in evidence certain other papers purporting to be copies of the monthly requisitions of McCartney for money to pay his various disbursements, with the action of the department thereon, for the purpose of showing how much money was drawn for the payment of the fees of store-keepers. These papers were under the seal of the treasury department and the signature of the secretary, but not that of the register, and were excluded by the court.

The learned judge was asked by the defendants to rule that the bond was avoided by the passage of the act of 1868, and the action under it; and the plaintiffs contended that it remained wholly valid, and required a due accounting for the expenses of store-keepers. The court ruled that the bond

did not require the sureties to make good any loss arising in respect to the fees of storekeepers, and that there was no sufficient evidence what part, if any, of the balance of McCartney's last account, as since reduced by credits, was due in respect to these fees, and ordered a verdict for the defendants.

Before the trial by jury, a demurrer, interposed by the defendants, was overruled.

The case was heard in this court upon the plaintiff's exceptions.

*P. Cummings,* Assistant Attorney of United States, for plaintiff.

*S. B. Ives, Jr.,* for defendants.

LOWELL, J. The learned judge of the district court ruled, as I think I should have ruled in his place, that the bond remained valid only in respect to those disbursements which could have been required to be made by the collector under the law as it stood at the date of the bond. That this ruling was sound so far it sustained the obligation for the original duties of the principal obligor, if the evidence was such that the amount due for a breach of those duties could be discriminated from that which arose from a failure in the new duty, is not to doubted. *Gaussen* v. *U. S.* 97 U. S. 584; *U. S.* v. *Singer,* 15 Wall. 111; *U. S.* v. *Kirkpatrick,* 9 Wheat. 720; *Com.* v. *Holmes,* 25 Gratt. 771.

A careful examination of the subject convinces me that a ruling should have been given, as prayed by the plaintiffs, that the bond was applicable to the pay of store-keepers, as well.

It is said by a late learned commentator that, according to the weight of authority, the sureties of an officer, upon his official bond, are liable for the faithful performance of all duties imposed upon the officer, whether by laws enacted previous or subsequent to the execution of the bond, which properly belong to and come within the scope of the particular office, though not for those which have no connection with it, and cannot be presumed to have been within the contemplation of the parties at the time the bond was executed. Notes to

*Rees* v. *Berrington*, 2 Lead. Cas. Eq. (4th Am. Ed.) 1867–1913. The language used in the foregoing extract is taken from one of the decisions which I shall cite, and the context and citations show that it refers to public officers, and to the weight of authority in the United States. A similar statement is made in Brandt's Suretyship, § 469. I have examined the cases cited by these authors, and some others, and find their positions to be sustained.

The sureties of a postmaster are not discharged by the subsequent passage of an act raising the rates of postage. *Postmaster Gen.* v. *Munger*, 2 Paine, 189; *Boody* v. *U. S.* 1 W. & M. 150. It was held in *White* v. *Fox*, 22 Maine, 341, that the sureties of a clerk of court remain liable though a penalty of 25 per cent. per annum is afterwards imposed by law for a failure by the clerk to pay over his surplus fees in due season. In that case *Shepley*, J., said: "If the sureties on the official bonds of persons holding offices created by law, and the duties of which are prescribed by law, were to be discharged by every change of the law relating to the duties, it would, in these days of over frequent change, be to little purpose to trouble officers to obtain sureties. There is little of similarity between such cases and those arising out of offices or trusts whose duties are assigned or regulated by contract." Page 347.

Like decisions have been made in several states and circuits in regard to sheriffs, constables, collectors of taxes, collectors of customs, and other officers. *Illinois* v. *Ridgeway*, 12 Ill. 14; *Smith* v. *Peoria Co.*, 59 Ill. 412; *People* v. *Vilas*, 36 N. Y. 459–465; *Mayor* v. *Sibberns*, 3 Abb. App. Cas. 266; *Bartlett* v. *The Governor*, 2 Bibb, 586; *Colter* v. *Morgan*, 12 B. Mon. 278; *Com.* v. *Gabbert*, 5 Bush, 438; *Marney* v. *State*, 13 Mo. 7; *King* v. *Nicholas*, 16 Ohio St. 80; *U. S.* v. *Gaussen*, 2 Woods, 92.

The decision last cited was affirmed on another ground, and the supreme court has never decided this point, but the remarks of *Strong*, J., show it to be his opinion that the bond will not be discharged unless duties of a different nature are imposed, or (which is the English way of putting it) the

duties of the office are so increased that the court can fairly call it a different office from that originally undertaken.   *U. S.* v. *Gaussen,* 97 U. S. 584.   Strong remarks in support of the general rule as above laid down will be found in the opinions of *Clifford,* J., in *U. S.* v. *Powell,* 14 Wall. 493, of *Hunt,* J., now of the supreme court, in *Beople* v. *Vilas,* 36 N. Y. 465, where he mentions collectors of customs and of internal revenue, and of *Swayne,* J., in *U. S.* v. *Singer,* 15 Wall, 111.

I have found very few cases in the United States which can be cited in opposition to this rule.   I have not fully examined the law of England, but will mention an early case because it is very often cited in this country, and has been misunderstood.   *Bartlett* v. *Att'y Gen.,* Parker, 277, was decided in the exchequer in 1709, and is reported briefly but with much precision, as follows: "Clarke, in 1691, was made collector of the customs in the port of Boston; Bartlett and others were security for him.   In 1698, (10 William III.,) the duties were granted upon coal, etc., which by the statute were to be under the management of the commissioners of the customs, and certain clauses for that purpose in the act. *The commissioners gave Clarke a deputation for that purpose and took security.*   Clarke afterwards died; the customs were paid; but on this new coal duty £1,000 remained unpaid, upon which the bond was put in suit against Bartlett, the widow and executrix of Bartlett, the security, and she brought her bill, and the question was whether the bond in which Bartlett became security extended to this new duty on coals. After adjournment the Barons delivered their opinions *seriatim,* and unanimously held that the bond did not extend to the new duty on coals;" and they granted a perpetual stay of the action.

I have put one line of the report in Italics in order to point out what I understand to be the actual legal result.   The new duty does not appear to have been considered a customs duty at all, though put under the management of the commissioners of customs.   The statute, which I have examined, (9 and 10 William III., *c.* 13,) leaves no doubt of this in my mind, and it seems that the commissioners took a new bond under

it. The case, therefore, is one of a new office bestowed upon the same person who already held one; and, of course, the old bond does not apply to the new office, and does remain good for its own purposes. *Skillett* v. *Fletcher,* L. R. 1 C. P. 217, and 2 C. P. 469.

Another case of the highest authority is *United States* v. *Kirkpatrick,* 9 Wheat. 720. In that case a collector appointed during a recess of the senate to hold until the end of the next session, and no longer, was nominated to and confirmed by the senate at its next session, and received a new commission, but gave no new bond. The decision was that the old bond ended with the expiration of the old commission. But Mr. Justice Story comments on the great change of duties which had been imposed upon the officer by some later statutes, and says that the new liabilities would not have been within the condition of the bond had it remained in force. The case, in that respect, may well fall within the qualifications of the rule which I will now proceed to consider.

The rule is usually said to be thus qualified: that it shall not apply if the office has been wholly changed, or if the new duties, however unimportant in themselves, are not germane to those of the original appointment. These qualifications lead to some uncertainty, because courts may differ as to what changes are in kind or degree within the limitation.

I have found but two cases in which it has been held that the new duties were so different from the old that they could not be supposed to be within the contemplation of the parties. In *United States* v. *Singer,* 15 Wall. 111, a distiller had given bond to comply with the provisions of the law in relation to the duties and business of distillers, and pay all penalties incurred or fines imposed upon them for a violation of any of the said provisions. These provisions were numerous; requiring notices, returns, keeping books, paying taxes, etc., etc. When the bond was given the law was that the store-keepers, who were officers of the United States appointed to duty at the warehouses of distillers, should be paid by the United States; afterwards a joint resolution was passed in congress requiring the distillers to reimburse to the United

States the expenses and salary of store-keepers. The action upon the bond alleged as a breach the non-payment of certain taxes, and the failure to reimburse these expenses which had been paid by the United States before the passage of the joint resolution. The point that the bond was entirely discharged does not appear to have been taken, and the court reversed the ruling which had decided that no taxes were due, and, of course, upheld the bond *pro tanto*. As to the salary of a store-keeper, they held that the joint resolution did not apply to salaries paid before its passage; but that, if it did, the parties could not be supposed to have had in mind that the United States would pass a law throwing the expenses of their own officers upon the distiller.

In *People* v. *Tompkins*, 74 Ill. 482, A. was appointed chief inspector of grain in a certain city and gave bond. The law imposed important duties upon the inspector, and his liabilities were correspondingly great; but they looked to a careful and impartial inspection of grain, and not to any direct pecuniary responsibility. The duties of chief inspector might be regulated to a certain extent by certain commissioners, and after the bond was given A. was duly required by the commissioners to receive and account for the fees of inspection. The court held that while such a designation of duty was within the power of the commissioners, the sureties could have had no reason to expect that a responsibility of that nature would be imposed upon their principal.

In this case the obligation imposed upon McCartney to pay store-keepers in addition to his own salary and commissions, and the payment of assessors, assistant assessors, clerks, etc., appears to me to be *ejusdem generis* with those duties which the obligors knew he was to perform, and, therefore, to bring this case within the general rule.

Notwithstanding general rules every contract must be interpreted by its own words; but I do not find anything in this bond to take it out of the rule. The recital that McCartney had been designated as disbursing agent to pay the expenses incident to the internal revenue laws, when construed by the light of the law prevailing in the United States, refers to fu-

ture as well as present laws and expenses, so far as they are germane to the office; and, moreover, the condition is general to account as such disbursing agent, which is an undertaking to account as such public agents are by law required to account.

The defendants took no exceptions to the rulings of the district judge, but it was necessary to consider the po'nts which I. have decided, not only because it comes within the exceptions of the plaintiff, but because, if upon the admitted facts the bond was void, the judge was right in ordering a verdict for the defendants.

I do not find it necessary to decide whether any case is made by the declaration, because that may be amended; nor whether a part of the transcripts from the treasury department was not properly verified, because, before the next trial, a further verification may be obtained. So far, however, as the defendants' objection is that the collector was only bound to pay the expenses of his district at some time, before or after he had left office, and that the bond does not require him to pay anything to the United States under any circumstances, I ought to say that, in my opinion, the condition to account and pay over obliges him to pay the expenses while he holds office, and that, when he retires, he must pay the balance in his hands to his successor, or to some other officer duly authorized by the United States to receive it. Upon the broad ground which I have been considering the order must be for a *venire de novo*.