THE STATE OF MISSOURI ex rel., SAMUEL L. BAY, Guardian, etc., Respondent, v. WILLIAM A. HOLMAN, Administrator, etc., et al., Appellants.

Kansas City Court of Appeals, June 2, 1902.

1. **Public Administrators:** LIABILITY OF SURETIES: GUARDIAN OF INSANE. Prior to the amendment of section 299, Revised Statutes 1889, by the Act of April 11, 1895, a public administrator was not authorized to take charge, under the order of the probate court, of the estate of insane persons; and his sureties were not liable for his waste of such estates.

2. ——: INSANE PERSONS: STATUTORY CONSTRUCTION: AMENDMENT.. In construing said section 299, the maxim, *expressio unius est exclusio alterius* applies as the amendatory Act of April 11, 1895, shows.

3. ——: BOND: LIABILITY FOR FUTURE DUTIES. The bond of a public administrator does not make his sureties liable for his default in duties imposed upon him by subsequent legislation, nor is that the rule unless it is clearly so intended by the bond.

4. ——: ——: AMENDMENT OF 1895: RELEASE OF SURETIES. The amendment of April 11, 1895, released the sureties of public administrators on all bonds given and approved prior to that date, and upon its approval such officials should have given new bond.

Appeal from Ray Circuit Court.—*Hon. J. W. Alexander*, Judge.

State v. Holman.

REVERSED.

STATEMENT BY BROADDUS, J.

This is a suit on the bond of William A. Holman as public administrator and ex-officio public guardian and curator of Ray county, Missouri.

The petition, after alleging the election of Holman in November, 1894, and the execution and approval of the bond in March thereafter, states that at the July term, 1895, of the probate court of Ray county, upon an inquest duly had before a jury therein, Julia Elliott, a resident of said county, was found and adjudged to be a person of unsound mind and incapable of attending to her affairs; that Holman, the then public adminis-.trator and ex-officio public guardian and curator of said county, was by the probate court ordered to take charge of the person and estate of said Julia Elliott as such public guardian; that under, and in obedience to said order, and by virtue of his said official position, he did take charge of her person and estate as such public guardian and continued in charge thereof until the time of his removal by the court; that at the July term, 1901, of said court, Holman made his final and turnover settlement; that the court ascertained that the amount due and owing from said Holman, as such public guardian, to his said ward was $1,297.95, and rendered judgment accordingly; that in said proceedings costs had been necessarily incurred in compelling said Holman to make settlement, amounting to $18; that said Holman had failed and refused to pay said costs or the amount found to be due or any part thereof, though demand had been made upon him by his successor in office; and asked judgment for the penalty of the bond with execution for the damages as above set forth.

The answer was a general denial. The facts on which the case was tried were agreed upon and are as follows:

Holman was elected to this office in November, 1894, to fill out an unexpired term. In March, 1895,

he gave the bond in suit, the execution and approval of which was admitted. The bond is in the usual form, conditioned for the faithful discharge of all the duties of the office. One of the sureties, W. W. Brown, died prior to this suit, and Mary A. Brown is his executrix. In July, 1895, Julia Elliott, a resident of Ray county, Missouri, was, upon an inquest duly held in the probate court, found and adjudged to be a person of unsound mind and incapable of attending to her affairs, and Holman ordered by the court to take charge of her person and estate as public guardian of said county. Under and in obedience to this order, and by virtue of his official position, he did take charge of the money and property of said ward and continued in charge thereof as such officer until he was, by the court, removed from the guardianship of her estate. In November, 1896, Robert J. Clark was elected public administrator of Ray county, and again in 1900 as his own successor, but resigned in July, 1901, and Samuel L. Bay, who now holds that office, was appointed in his stead.

On July 16, 1896, Holman filed his first annual settlement as public guardian of said estate, reciting the receipt of $1,147.30 of his ward's money in 1895, and showing a balance in his hands as such public guardian of $1,136.85 belonging to his ward on that date. In July, 1897, he filed his second annual settlement showing a balance in his hands of $1,108.70 belonging to his ward. His third annual settlement, made in July, 1898, shows a balance of $1,104.18 due his ward; and his fourth annual settlement, filed in July, 1899, shows a balance in his hands of $1,095.65 belonging to his ward. February 20, 1901, after due notice, his appointment as public guardian of said estate was revoked, and he was removed from the guardianship thereof and ordered to make final settlement. Thereupon Robert J. Clark, the then public administrator of Ray county, was ordered by the court to take charge of the estate as public guardian; he did so, and continued the guardianship thereof until July 3, 1901, when he resigned his office as public administrator and Samuel L. Bay, who

had been appointed in his stead, took charge of said estate as public guardian under the orders of the probate court, and he still has charge thereof.

On July 18, 1901, at the regular July term of the probate court, Holman, after taking the necessary legal steps and giving the proper notice, filed his final and outgoing settlement as public guardian of said ward, and the court, upon investigation, found: "That said William A. Holman is, in his official capacity as public guardian of the estate of said Julia Elliott and by virtue of his former official position as public administrator and ex-officio public guardian and curator of Ray county, indebted to said Julia Elliott in the sum of $1,297.95," rendered judgment accordingly, as well as for costs in that behalf expended, and ordered that he pay over the amount so found to be due to Samuel L. Bay, public guardian in charge of said estate. All this Holman failed and refused to do, though demand was made upon him therefor.

The court found for the plaintiff against said Holman and his securities in the sum of $1,335.42. The defendant sureties appealed. The contention is that the defendant sureties are not liable on the bond for the following reasons:

First. Because it became the duty of the probate court, when it found by judicial inquiry that said Julia Elliott was insane, to have appointed a special guardian for her, and that the placing of her person and estate in the hands of said Holman, as such public administrator, was in disobedience of law.

Second. Because after the execution of said bond by them, the duties and responsibilities of the office of public administrator were enlarged by act of the Legislature.

*J. L. Farris & Son* for appellants.

(1) By virtue of the Revised Statutes 1889, chapter 86, and after ascertaining under said statute that the said Julia Elliott was insane and incapable of managing

her affairs, it then became the imperative duty of the judge of the probate court, to appoint a special guardian of the person and estate of the said Julia Elliott, and to have required said guardian to give a good and sufficient bond. Secs. 5517 and 5521, R. S. 1889, chapter 86. (2) Hence, the order of the probate judge placing Julia Elliott, insane, with her property in the hands and under the control of the public administrator, was in disobedience of the law governing the management of the insane and their property, which being true the defendants, being the securities on the bond, should not be made liable. (3) At the time the defendants became securities upon the bond here sued upon, there was no law in existence whereby the judge of the probate court under any conditions could order the public administrator to take charge of Julia Elliott, insane, or control of her property. Section 299, article 15; Session, Acts, 1895, p. 35. (4) The appellants as securities can not be held beyond the precise terms of their contract, nor can their liability be extended by implication; neither can they be made liable on this official bond for new responsibilities which were added to the office of public administrator, subsequent to the execution of said bond by the securities, appellants herein, through subsequent legislative amendments. McCurdy v. Brown, 8 Mo. 549; Blair v. Ins. Co., 10 Mo. 560; State to use v. Roberts, 68 Mo. 234; Bauer v. Cabanne, 105 Mo. 110; Bricker v. Stone, 47 Mo. App. 530; Erath v. Allen, 55 Mo. App. 107; Schuster v. Weiss, 114 Mo. 158.

*Garner & Divelbiss* for respondent.

(1) The amendment of 1895 added no new or additional duties or burdens to the office of public administrator and ex-officio public guardian and curator. R. S. 1889, secs. 296, 300. (2) The probate court could order Holman to take charge of any estate in which no letters had been previously granted. R. S. 1889, sec. 299; Callahan v. Griswold, 9 Mo. 784; Headlee v. Cloud, 51 Mo. 301. (3) Even though the Act of 1895 did add

new duties to the office of public administrator and ex-officio public guardian and curator, they were germane to the original duties of that office and were of the same general nature and character as those imposed by law on the holder of that office at the time of the execution of the bond sued on. Woerner Am. Law, Guardianship, pp. 432, 451, and note. Johnson v. Bank, 56 Mo. App. 257; Oldham v. Trimble, 15 Mo. 225; State v. Rolland, 23 Mo. 95; R. S. 1889, secs. 5297, 5298, et seq.; R. S. 1899, secs. 5525, 5526, et seq.; Laws 1893, p. 178; R. S. 1899, sec. 3704. (4) An official bond covers not only duties imposed by existing law, but also those that may be subsequently added by the Legislature, where they are such as may reasonably or naturally be connected with the office or its business; that is, if the additional duties are germane to the office, or are of the same general character and nature as the duties originally belonging to the office. Throop on Pub. Off., sec. 271; State v. Marney, 13 Mo. 7; State v. Smith, 57 Mo. App. 120; King v. Nichols, 16 Ohio St. 80; Dawson v. State, 38 Ohio St. 1; Bartlett v. Governor, 2 Bibb (Ky.) 586; Colter v. Morgan's Adm'r., 12 B. Mon. (Ky.) 278; Com. v. Gabbert, 5 Bush (Ky.) 438; Governor v. Ridgway, 12 Ill. 14; Smith v. Peoria Co., 59 Ill. 412; Prickett v. People, 88 Ill. 120; Territory v. Carson, 7 Mont. 417; People v. Vilas, 36 N. Y. 469, 93 Am. Dec. 520; Bd. of Ed. v. Quick, 99 N. Y. 138; People v. Backus, 117 N. Y. 196; White v. Fox, 22 Me. 341; Brown v. Sneed, 77 Tex. 476-7; U. S. v. McCartney, 1 Fed. Rep. 104; Chadwick v. U. S., 3 Fed. Rep. 570; U. S. v. Powell, 14 Wall (U. S.) 493; U. S. v. Singer, 15 Wall (U. S.) 131; Soule v. U. S., 100 U. S. 11; 7 Notes to U. S. Rep. 856. (5) If Holman took charge as public administrator and ex-officio public guardian and curator of the estate, and continued to act as such, his sureties are liable for any default of his in the administration thereof. State v. Purdy, 67 Mo. 89; Leeper v. Munday, 111 Mo. 312; Headlee v. Cloud, 51 Mo. 301; Green v. Tittman, 124 Mo. 375, 376; Dunn v. Bank, 109 Mo. 90. (6) Holman

took charge of the property of his ward *colore officii*,
and all his acts, in relation thereto, were by virtue of
his official position, and his sureties must respond for
his official misconduct in the management of the estate.
State v. Purdy, 67 Mo. 89; Rollins v. State, 13 Mo. 437;
State v. Moore, 19 Mo. 369; State v. Farmer, 21 Mo.
160; State v. Hadlock, 52 Mo. App. 172; Kansas City v.
Minor, 89 Mo. App. 617; City v. Parker, 10 Met. (Mass.)
309, 43 Am. Dec. 436; Turner v. Sisson, 127 Mass. 191;
Thomas v. Connelly, 104 N. C. 342; Bank v. Rutledge,
84 Fed. Rep. 400.  (7) If it be conceded that Holman
had no authority to take charge of this estate, then his
act in taking charge was itself a wrong or trespass,
constituting a breach of his bond.  State v. Moore, 19
Mo. 369; State v. Farmer, 21 Mo. 160; State v. Shack-
lett, 37 Mo. 280; Miss. Co. v. Jackson, 51 Mo. 23.  (8)
Where an administrator, guardian, curator, sheriff, or
other officer, collects money in his official capacity that
he has no right to collect, his sureties are liable if he
fails to account for it.  State v. Scholl, 47 Mo. 84; Gam-
ble v. Gibson, 59 Mo. 594; Dix v. Morris, 66 Mo. 514;
Lewis v. Carson, 93 Mo. 591.

BROADDUS, J.—Under the law in force at the
time of the execution of the bond in suit, Holman was
not public guardian for insane persons under any cir-
cumstances.  Section 299, Revised Statutes 1889, defines
his powers and duties as public administrator, and as
such he was restricted to administration on certain
estates and to act as guardian for minors under certain
conditions.  His powers were purely statutory, and it
certainly can not be claimed that a public officer can
have any implied powers.  Such would be a dangerous
doctrine, and not to be tolerated for a moment.  Said
section provided that, "it shall be the duty of the public
administrator to take into his charge and custody the
estates of all deceased persons, and the estates of all
minors in his county, in the following cases:
"First.  When a stranger dies intestate in the

county without relations, or dies leaving a will, and the executor named is absent or fails to qualify.

"Second.   When persons die intestate without any known heirs.

"Third.   When persons unknown die or are found dead in the county.

"Fourth.   When money, property, papers or other estates are left in a situation exposed to loss or danger and no other person administers on the same.

"Fifth.   When any estate of any person who dies intestate therein or elsewhere is left in the county, liable to be injured, wasted or lost, when said intestate does not leave a known husband, widow or heir in this State.

"Sixth.   The person of all minors under the age of fourteen years, whose parents are dead, and who have no legal guardian.

"Seventh.   The estate of all minors whose parents are dead, or if living, refuse or neglect to qualify as curators, or having qualified, have been removed, or are from any cause incompetent to act as curator, or who have no one authorized by law to take charge of and manage their estate.

"Eighth.   When from any other good cause said court shall order him to take possession of any estate to prevent its being injured, wasted, purloined or lost."

The language of the statute is specific as to what estate a public administrator may take in charge and of the persons for whom he may act as guardian, and in no instance is he authorized to take charge of the person or estate of the insane.   It is a familiar rule of construction that the expression of a particular thing is the exclusion of another.   *Expressio unius est exclusio alterius.*

But plaintiff claims that such authority is conferred by section 300, *idem.*   Said section is as follows: "In addition to the provision of this article, he and his securities shall have the same power as are conferred upon, and be subject to the same duties, penalties, provision and proceedings as are enjoined upon or authorized against executors and administrators, guardians

and curators by this chapter, so far as the same may be applicable." By an examination of article 15 of the chapter entitled, "Public Administrators," it will be seen that there are no powers and duties conferred upon public administrators, no provision how they shall proceed, in the discharge of their duties, and no penalties imposed for a violation of such duties, except as will be found in section 302, *idem,* which only requires them to give notice of the time when they have taken charge of certain estates. It seems to us very clear that it was not the intention of the Legislature to confer any additional authority upon public administrators, but only to clothe them as such, with the same powers conferred by statute upon other administrators and guardians, and subjecting them to the same course of proceeding, and imposing upon them the same penalties for a violation of duty.

The Legislature recognized this omission in the statute, and remedied it by the Act of April 11, 1895, wherein said section 299 was so amended as to authorize the public administrator as ex-officio public guardian, to take charge of the persons and estates of the insane in certain cases. This act took effect from the date of its passage, and was in force at the time said Holman took charge of the person and estate in question. It is the contention of the plaintiff that the obligation of the defendant sureties not only includes the duties imposed by the law existing at time of the execution of the bond in suit, but also duties imposed by subsequent law of a kindred nature, and in support thereof we are cited to many eminent authorities. See, United States v. Singer, 82 U. S. 122; Bartlett v. Governor, 2 Bibb (Ky.) 586; Prickett v. People, 88 Ill. loc. cit. 120; United States v. Powell, 14 Wall 493, and among others, reference is made to certain Missouri cases: Marney et al., v. State, 13 Mo. 7, and State v. Smith, 57 Mo. App. 120.

In the last case, Judge BOND, who delivered the opinion of the court, quotes with approval the language of the decision in United States v. Singer, supra, that, "the official bond of parties undoubtedly covers not

merely duties imposed by existing law, but duties belonging to, and naturally connected with, their office or business imposed by subsequent law." But as the question did not arise on the facts in that case, the decision may be regarded as *obiter dictum*.

But the law seems to be well settled to the contrary in this State. In State to use, etc., v. Roberts, it was held that "the State can not by a legislative act, materially modify a contract between herself and a citizen, any more than she can impair the obligation of a contract between citizens." In Schuster v. Weissm, 114 Mo. 158, it is held: "Where at the time of the execution of an appeal bond, the Supreme Court had appellate jurisdiction of the action only on appeal from the St. Louis Court of Appeals, and the bond was made to conform to the law as it then existed, and subsequently it was so changed that the appeal was transferred to the Supreme Court, and judgment was rendered thereon without an intermediate judgment in the Court of Appeals, the sureties on such appeal bond will be discharged."

Judge GANTT, who delivered the opinion of the court, discussed the subject at considerable length and held that while the act in question, transferring cases from the St. Louis Court of Appeals to the Supreme Court, was constitutional in that respect, that it impaired the obligations of the defendant sureties, and imported new and different conditions into the bond; and, hence, worked a discharge of such sureties. He quotes with approval the unequivocal language of Chief Baron POLLOCK in Mayor v. Oswald, 3 Ellis & Blackburn 665: "Every contract (which does not *expressly* provide to the contrary) must be considered as made with reference to the existing state of the law; and, if by the intervention of the Legislature a change is made in the law which in any degree affects the contract, such contract, made without some clear and distinct reference to the prospect or possibility of a change, does not hold with reference to the state of things as altered by the new law."

The condition in the bond in suit is, in terms, that the "said William A. Holman shall faithfully discharge all the duties of his office." It was not a part of the duties of his office at that time to have charge of the estates and persons of the insane under any circumstances; and there is nothing in the bond to indicate that it was made with reference to any prospective change of the existing law. The same principle of law is also recognized in the following cases, viz.: State v. Peterson, 66 Mo. App. 257; Bauer v. Cabanne, 105 Mo. 110.

It follows, therefore, that the enactment of the amendment to section 299, on the eleventh of April, 1895, relieved the defendants as securities of all liability on said bond, because it imposed the additional obligation on Holman as public administrator of making it his duty to take charge of the persons and estates of the insane, a duty which did not belong to his office at the date of its execution. The amendment in question was desirable, and no question can be legitimately raised as to its constitutionality; and the mistake was made in Holman not giving a new bond under the changed conditions of the law.

As the question decided goes to the right of the plaintiff to recover, all other questions raised by the parties in this court become immaterial and it is unnecessary to decide them.

For the reasons given the cause is reversed. All concur.