UNITED STATES *v.* POWELL.

1. On a distiller's bond, given under the 7th section of the Internal Revenue Act of July 20th, 1868 (15 Stat. at Large, 128), conditioned that the obligors "shall in all respects comply with all the provisions of law in relation to the duties and business of distillers," the condition is prospective as well as present, and embraces such provisions of law relating

to the duties and business of distillers as may be in force during the term for which the bond is given, whether enacted before or after its execution.

2. The "distillery warehouses," which distillers are required by the 15th section of the same act to provide, situated on their distillery premises, are 'bonded warehouses," within the meaning of the joint resolution of Congress of March 29th, 1869, which declares that the proprietors of all "internal revenue bonded warehouses" shall reimburse to the United States the expenses and salary of all storekeepers put by it in charge of them.

3. These expenses properly include *per diem* wages paid to storekeepers for taking charge of them on Sundays.

Error to the Circuit Court for the Middle District of Tennessee; the case being this:

A statute of July 20th, 1868,* requires that every person intending to engage in the business of a distiller shall give a bond with sureties, conditioned that the principals in the bond

"Shall faithfully comply with all the provisions of law in relation to the duties and business of distillers."

The statute also enacts:

"Section 15. That every distiller shall provide at his own expense a warehouse, to be situated on and to constitute a part of his distillery premises, to be used only for the storage of distilled spirits of his *own* manufacture, . . . and such warehouse, when approved by the Commissioner of Internal Revenue, on report of the collector, is hereby declared to be *a bonded warehouse of the United States, to be known as a distillery warehouse,* and shall be under the direction and control of the collector of the district, and in charge of an internal revenue storekeeper assigned thereto by the Commissioner of Internal Revenue."

"Section 52. Every storekeeper shall have *charge* of the warehouse to which he may be assigned, under the direction of the collector controlling the same, which warehouse shall be in the joint custody of such storekeeper and the proprietor thereof and *kept securely locked, and shall at no time be unlocked and opened or remain open unless in the presence of such storekeeper* or other

---

* 15 Stat. at Large, 127, § 7.

person who may be designated to act for him as hereinafter pro-vided. And no articles shall be received in or delivered from such warehouse except on an order or permit addressed to the storekeeper and signed by the collector having control of the warehouse."

With this statute in force, two persons, Powell and Hildebrand, on the 1st December, 1868, gave a bond, with two other persons as sureties, conditioned in the already-quoted language of the statute "faithfully to comply with *all* the provisions of law in relation to the business of distillers," and entered at once on the business of distilling. They constructed warehouses for the storage of spirits of their own manufacture; of which storekeepers assigned by the Commissioner of the Internal Revenue, and to whom the government paid $4 wages *per diem*, took charge; taking such charge during Sundays as well as during other days of the week.

Subsequently to the date of the bond above mentioned, of 1st December, 1868; that is to say, on the 29th of March, 1869, Congress passed a joint resolution,* thus:

"The proprietors of all *internal revenue bonded warehouses* shall reimburse the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses."

Subsequently, again, to the date of this joint resolution, that is to say, on the 29th of April following, the same distillers, with the former sureties, gave a second bond, conditioned in the same words as the first and in pursuance of the same statute with it—constructing warehouses, &c., as before, which were taken possession of by internal revenue storekeepers, &c.—all exactly as before.

The government having paid all these storekeepers, demanded of the distillers reimbursement for payments made for their services after the 29th of March, 1869, when the joint resolution of Congress was passed, including reimbursement for services rendered on Sundays. The distillers denied their obligation to pay for services on any day, under either bond, because:

---

* 16 Stat. at Large, 52.

1st. The storekeepers had been selected, appointed, and put in charge by the government and not by them.

2d. The storehouses were not "bonded warehouses," in contemplation of law, but were known as "distillery warehouses," being attached to their distillery and constituting part of their distillery premises.

They denied, additionally, their obligation to reimburse the government for payments made to men for working on Sundays.

The government hereupon sued both principal and sureties on both bonds, when the matters above stated were set up by way of plea; the sureties pleading in addition that they were sureties only, and as to the bond of December, 1868 (the bond first given), that at the date thereof the government by law was bound to pay the storekeepers, and averring that the subsequently-passed joint resolution of 29th of March, 1869, if applicable to distillery warehouses at all, could not increase the responsibility of them, the said sureties.

The court below was of opinion that all these pleas, except that one which alleged that the distillery warehouses were not "bonded warehouses," were good, and charged the jury accordingly. From the judgment which followed, the United States brought the case here on error.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, for the plaintiff in error:*

1. The condition that the principals " shall faithfully comply with all the provisions of law in relation to the duties and business of distillers," is to be understood as embracing such provisions of law as may be in force during the period for which the bond is given, whether enacted before or after the execution of the bond. There is nothing in the language employed that restrains the condition to statutes in force when the bond is executed; the only limitation seems to be that the provisions of law, with which the principals are faithfully to comply, must relate to the duties and business of distillers. The undertaking is prospective and contem-

plates a continuing liability for the observance of the require-
ments of all provisions of that character which are or may
be passed. In *King* v. *Nichols*,* an action upon a sheriff's
bond, in Ohio, under a statute requiring sheriffs to give
bond, with sureties, "conditioned for the faithful discharge
of their respective duties," it was held that this language
was broad enough to embrace any duty that may have ex-
isted at the date of the bond, or that might have been im-
posed upon the officer by law during the term for which it
was given.

2. That the condition of the second bond applies to pro
visions of law concerning the duties and business of distillers
enacted subsequently to the date of that act, but prior to the
execution of the bond, can admit of no doubt.†

3. The joint resolution of March 29th, 1869, requiring
proprietors of all internal revenue bonded warehouses to
reimburse the United States the expenses and salary of all
storekeepers in charge of such warehouses, clearly extends
to distillers. The latter were bound to provide distillery
warehouses in carrying on their business as distillers, and
these warehouses are by the internal revenue laws declared
to be "bonded warehouses."

From the nature of the duties of storekeepers for distil-
lery warehouses, as prescribed by the act of July 20th, 1868—
duties which embrace among other things the custody of the
warehouse—the duties must be continuous throughout the
entire term, Sundays included, as long as the storekeeper
remains in office. Sunday is indeed obviously the day when
his vigilance may be most required.

*No counsel appeared for the defendants in error.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Persons intending to engage in the business of a distiller
are required to give notice in writing to the assessor of the

---

* 16 Ohio State, 83.

† Farr *v.* Hollis, 9 Barnewall & Cresswell, 315; State *v.* Bradshaw, 10
Iredell, 229.

district, stating their names and places of residence and the place or places where the business is to be carried on, and before proceeding with the business they are required to make and execute a bond in the form prescribed by the commissioner, with at least two sureties to be approved by the assessor of the district, conditioned that the principal shall faithfully comply with all the provisions of law in relation to the duties and business of distillers, and that he will pay all penalties incurred or fines imposed on him for a violation of any of the said provisions.*

Pursuant to that requirement the two defendants first named in the declaration made and executed the two bonds therein described, conditioned in the very words of the seventh section of the act containing the requirement, as appears by the record.

Distillers are also required by the fifteenth section of the act to provide at their own expense a warehouse, situated on and to constitute a part of their distillery premises, to be used only for the storage of distilled spirits of their own manufacture; and the provision is that such warehouse, when approved by the commissioner, on report of the collector, shall be deemed to be a bonded warehouse of the United States and be known as a distillery warehouse, and that it shall be under the direction and control of the collector of the district and in charge of an internal revenue storekeeper assigned thereto by the commissioner.

Provision is also made by the joint resolution of the twenty-ninth of March, 1869, that the proprietors of all internal revenue bonded warehouses shall reimburse to the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses, and that the same shall be paid into the treasury and accounted for like other public moneys.†

Most of the material facts are either admitted or not controverted by the pleadings. It is conceded as follows: (1.) That the principal defendants engaged in the business of a

---

* 15 Stat. at Large, 127.                    † 16 Id. 52.

distiller for the periods mentioned in the declaration. (2.) That they constructed warehouses for the storage of distilled spirits of their own manufacture. (3.) That the warehouses were in charge of internal revenue storekeepers assigned thereto by the commissioner. (4.) That the plaintiffs paid the *per diem* wages of the storekeepers, and that they demanded of the defendants to be reimbursed the amount so paid for that service, and that the defendants refused to pay as requested, and that the bonds described in the declaration were duly executed.

Payment being refused, the plaintiffs brought an action of debt to recover the amount. Service having been made the defendants appeared and pleaded as follows: (1.) Performance. (2.) That they were not bound to pay the wages of the storekeepers in charge of their distillery warehouse; that the storekeeper was an officer appointed and selected by the plaintiffs, and that he was placed by them in the distillery warehouse of the defendants, and that they, the plaintiffs, were bound to pay his *per diem* wages. (3.) That the warehouse attached to their distillery is known as a distillery warehouse and not as a bonded warehouse, as it constitutes a part of their distillery premises, and that the defendants are not bound to pay the wages of the storekeeper. (4.) That the plaintiffs have no right to be reimbursed for the wages they paid to the storekeeper for service rendered or work done on Sunday or the Lord's day. (5.) Superadded is also the separate plea of the sureties — that the plaintiffs at the time the first bond was executed were bound to pay the storekeeper in charge of the warehouse, and that the subsequent act, even if applicable to distillery warehouses, cannot change or alter their liability as sureties, nor can it increase their responsibility.

1. Performance certainly is not proved as matter of fact, as it is not pretended that the defendants have reimbursed the plaintiffs for any part of the amount which the latter paid to the storekeepers for their *per diem* wages while they were in charge of the defendants' distillery warehouses, which is all that need be remarked in respect to that defence.

2. Undoubtedly the storekeeper is an officer appointed and selected by the plaintiffs, but the question whether the defendants are bound to reimburse the plaintiffs the amount paid for their *per diem* wages while in charge of their distillery warehouses is a question of law depending upon the construction of the joint resolution to which reference has been made. Argument to show that the question must be answered in the affirmative, if the joint resolution is applicable to the case, is hardly necessary, as the language is explicit that the proprietors of all internal revenue bonded warehouses shall reimburse to the United States the expenses and salary of all storekeepers or other officers in charge of such warehouses.

3. Attempt is made to show that a distillery warehouse is not a bonded warehouse within the meaning of the joint resolution, but the proposition cannot be maintained, as the act of Congress provides that such a warehouse, when approved by the commissioner, on report of the collector, shall be deemed a bonded warehouse of the United States; and it matters not that the act provides that it shall be known as a distillery warehouse, as the requirement of the act is that it shall be under the direction and control of the collector of the district, and be in charge of an internal revenue storekeeper assigned thereto by the commissioner. Beyond all doubt, therefore, the internal revenue bonded warehouse referred to in the joint resolution includes the bonded warehouse known as the distillery warehouse described in the fifteenth section of the act imposing taxes on distilled spirits.*

4. Suppose that it is so, still it is contended by the defendants that they are not bound by the first bond to reimburse the plaintiffs for the amount paid to the storekeeper for that service, because the bond was made and executed before the passage of the joint resolution.

It must be admitted that any substantial addition by law to the duties of the obligor of a bond, after the execution

---

* 15 Stat. at Large, 180.

of the instrument, materially enlarging his liabilities, will not impose any additional responsibility upon his sureties, unless the words of the bond, by a fair and reasonable construction, bring such subsequently imposed duties within its provisions.* Conceding that rule to be correct it becomes necessary to examine the recitals and condition of the bond first described in the declaration, as the question must depend very largely upon the construction of the language there employed. By the recital of the bond it appears that the principals therein named intended, on and after that date, to be engaged in the business of distillers within the fifth collection district of the State, and the condition of the bond is that they shall *in all respects* faithfully comply with *all* the provisions of law in relation to the duties and business of distillers, and that they shall pay all penalties incurred or fines imposed on them for a violation of any of the said provisions. Stronger language to signify an intention to stipulate that the principals in the bond should comply with duties subsequently imposed by law in relation to the business of a distiller could not well be employed, as the language of the bond is that they shall faithfully comply with all the provisions of law in relation to the duties and business of distillers, knowing as all the obligors did that Congress might at any time enact new provisions imposing new duties or vary those already imposed.† Both parties, it must be assumed, knew that changes might be made in that behalf at any time, and the defendants must have understood that it never could have been intended that a new bond should be required with every modification made in relation to the duties and business in which the principals in the bond were about to engage. Where a person was elected sheriff and executed a bond to the county conditioned that he would well and faithfully in all things discharge the duties of the office during his continuance in the same by virtue of his said election, the Supreme Court of

---

* Farr v. Hollis, 9 Barnewall & Creswell, 332.

† Bartlotte v. Governor, 2 Bibb, 586; Minor v. Mechanics' Bank, 1 Peters, 73.

Ohio held that the language of the bond was broad enough, not only to embrace any duty imposed at the date of the bond but any also that might be imposed upon the officer by law during the term for which the bond was given.* Bonds in such cases, as well as in cases like the one before the court, are required to secure the faithful discharge of the duties ordinarily imposed upon the principal obligor, without reference to the time when the law was passed imposing the duty, and where, as in this case, the language of the bond is sufficiently comprehensive to embrace duties subsequently imposed, of a character corresponding with those required at the date of the bond, the construction which gives a prospective as well as a retrospective operation to the condition of the bond may well be adopted as both reasonable and just to all concerned.†

Exceptional cases may doubtless arise, as where the condition of the bond is, in terms, or by a fair and reasonable construction, limited to existing duties, or where the appointment is a temporary one, to expire at the end of the next session of the Senate. Different rules are applied in the case of a temporary appointment, as the commission is for a different tenure, and unless there is something in the act under which the first commission issued showing that it contemplated a permanent and continuing responsibility under laws subsequently passed, the rule is that the liability of sureties must be strictly confined to the duties created by the acts passed antecedent to the date of the bond.‡

Given, as the second bond was, subsequent to the passage of the joint resolution, the defence that the bond is not embraced in that provision is entirely without merit, and is accordingly overruled.

5. Reimbursement for services rendered or work done by the storekeepers, or for money paid for their *per diem* wages

---

* King et al. *v.* Nichols et al., 16 Ohio State, 82; United States *v.* Bradley, 10 Peters, 343; Cameron *v.* Campbell, 3 Hawks, 285.

† White *v.* Fox, 22 Maine, 341; United States *v.* Hudson, 10 Wallace 406; United States *v.* Tingey, 5 Peters, 127.

‡ United States *v.* Kirkpatrick, 9 Wheaton, 730.

on Sunday or the Lord's day, it is insisted cannot be lawfully claimed because the law, it is said, did not contemplate their employment on that day.

Storekeepers, of the kind, may be appointed by the Secretary of the Treasury, in such numbers as may be necessary, with such compensation, not exceeding five dollars per day, as shall be determined by the commissioner. They are required to take an oath faithfully to perform the duties of their office, and to give a bond to be approved by the commissioner for the faithful discharge of their duties, and they are to have charge of the warehouses to which they may be respectively assigned, under the direction of the collector controlling the same, which warehouse, it is provided, shall be in the joint custody of such storekeeper and the proprietor thereof; and the provision is that the warehouses shall be kept securely locked, and shall at no time be unlocked or opened, or remain open, unless in the presence of such storekeeper or other person who may be designated to act for him by the collector in case of absence from sickness or from any other cause.* Safe custody of the articles deposited in the warehouse is one of the primary duties of the storekeeper, and it is clear that he is required to perform that duty on Sunday as well as on every ordinary working day of the week, as such custody is a work of necessity, and, therefore, is not unlawful, even in jurisdictions where worldly labor or business on the Lord's day is forbidden by law.†

6. Sufficient has already been remarked to show that the defence set up in the separate plea filed by the sureties cannot be maintained, as the language employed in the conditions of the respective bonds is comprehensive enough to bring the case within the duty imposed upon the proprietors of internal revenue bonded warehouses by the joint resolution which requires such proprietors to reimburse the United States for the expenses and salary paid to such storekeepers or other officers in charge of such warehouses.

---

* 13 Stat. at Large, 146.

† Powhatan Steamboat Co. *v.* Appomattox Railroad Co , 24 Howard, 255.

Diametrically opposite views were entertained by the presiding justice in the Circuit Court, and he accordingly instructed the jury that neither the distillers nor their sureties were liable to the plaintiffs under the first bond. (2.) That the reimbursement to the plaintiffs by the distillers of the salaries of storekeepers was not one of the duties of the distillers for which the second bond was given.* (3.) That the plaintiffs could not recover the amount paid to the storekeepers for services performed by them on Sundays, as the law did not contemplate their employment on that day.

Under those instructions the jury returned their verdict for the defendants, and the plaintiffs excepted and removed the cause in this court. Having determined that the instructions were erroneous, it only remains to remark that the judgment must be

REVERSED, and the cause remanded with directions to issue a
                                                    NEW VENIRE.

_____

* White *v.* Fox, 22 Maine, 341; State *v.* Bradshaw, 10 Iredell, 232.