UNITED STATES v. NATIONAL SURETY CO. OF KANSAS CITY, MO.

(Circuit Court of Appeals, Sixth Circuit. May 26, 1903.)

No. 1,161

1. INTERNAL REVENUE—DISTILLER'S BOND—LIABILITY OF SURETIES.

A distiller's official or annual bond, given pursuant to Rev. St. § 3260 [U. S. Comp. St. 1901, p. 2114], and conditioned that he "shall faithfully comply with all the provisions of law relating to the duties and business of distillers," binds the sureties for the payment of the tax on all spirits distilled during its term, which is one of the duties of the distiller, and which tax becomes a debt due to the United States from the time the spirits are manufactured, due and payable at once on their removal, unless they are entered for deposit in warehouse; nor are the sureties relieved from such liability by the execution of a warehousing bond given pursuant to section 3293 [page 2133] to secure delay in payment of the tax, which does not extinguish the debt, nor become a substitute for

the original bond with respect to such spirits, but is an additional or cumulative security required under the scheme of the revenue law because of the additional risk incidental to the long time given the distiller in such case before he is required to remove the spirits and pay the tax.

In Error to the District Court of the United States for the Western District of Kentucky.

This suit was brought by the United States on two ordinary annual distillers' bonds, executed by Wilson Howard, with the defendant in error as surety thereon, one in 1896, and the other in 1897, and exactly similar in form and effect. The questions now presented for determination arise under a second amended petition in the cause.

The action was for the collection of certain special deficiency assessments made by the commissioner of internal revenue, and also for the amount of the tax on a specified number of gallons of spirits manufactured or distilled by said Howard during the term covered by the bonds, and subsequently deposited in a warehouse, and a warehousing bond executed to secure payment of the tax due thereon.

The suit was against the defendant in error alone, Wilson Howard having died before the institution of the suit. The amount claimed on account of special deficiency assessments was paid or judgment taken without contest in the court below, and recovery for the tax on the quantity of spirits deposited in the warehouse was resisted on the ground that a warehousing bond had been executed and accepted to secure payment of that tax, in consequence of which the contention is that the defendant surety company was not liable for such tax.

A reply to the defendant's answer was filed on behalf of the United States, setting forth that judgment had been obtained upon the warehousing bond, and execution duly and promptly issued thereon and returned nulla bona. The reply further averred that the surety on the warehousing bond was insolvent, and that since the execution of those bonds Wilson Howard had died, leaving no property whatever, and that his estate was insolvent. To this reply a demurrer by the defendant was sustained by the court, and the suit dismissed (112 Fed. 336), and to review that judgment writ of error was duly sued out and the case brought to this court.

R. D. Hill, for the United States.

Robert T. Hough, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

The distiller's bond on which the suit was brought was executed under the section 3260 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2114], as amended by the act of 1894, Act Aug. 27, 1894, c. 349, § 67 [U. S. Comp. St. 1901, p. 2117], which, so far as its provisions directly affect the matter now under consideration, is as follows:

"Every person intending to commence or to continue the business of a distiller shall, on filing with the collector his notice of such intention, and before proceeding with such business, and on the first day of May of each succeeding year, execute a bond in the form prescribed by the commissioner of internal revenue, conditioned that he shall faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions; and that he shall not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any of the dis-

tilling apparatus, to be incumbered by mortgage, judgment, or other lien, during the time in which he shall carry on said business. Said bond shall be with at least two sureties, approved by the collector of the district, and for a penal sum not less than the amount of tax on the spirits that can be distilled in his distillery during a period of fifteen days. But in no, case shall the bond exceed the sum of one hundred thousand dollars."

After reciting that Wilson Howard was engaged, and intended to be engaged, in the business of a distiller, the condition of the bond, so far as that need be given, is:

"Now, therefore, if the said Wilson Howard shall, in all respects, faithfully comply with all the provisions of law in relation to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions, and has not suffered and shall not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any of the distilling apparatus, to be incumbered by mortgage, judgment, or other lien, during the time in which he has and shall carry on said business, then this obligation shall be void; otherwise it shall remain in full force."

The warehousing bonds were executed pursuant to section 3293 of the Revised Statutes [U. S. Comp. St. 1901, p. 2133]. In relation to the tax imposed on spirits it was enacted in section 48 of the act of August 27, 1894, c. 349, 28 Stat. 563 [U. S. Comp. St. 1901, p. 2110]:

"That the tax herein imposed shall be paid by the distiller of the spirits, on or before their removal from the distillery or place of storage, except in case the removal therefrom without payment of tax is authorized by law; and (upon spirits lawfully deposited in any distillery warehouse, or other bonded warehouse, established under internal revenue laws) within eight years from the date of the original entry for deposit in any distillery warehouse, or from the date of original gauge of fruit brandy deposited in special-bonded warehouse, except in case of withdrawal therefrom without payment of tax as authorized by law."

It has been suggested, rather than argued, that 'since the enactment of the law establishing bonded warehouses, and authorizing delay in payment of taxes due on spirits, upon the execution of a warehousing bond the sureties on the original official bond of the distiller are not liable for the tax secured by the warehousing bond.

We do not think, however, it requires discussion to show that the payment of the tax imposed on distilled spirits is the duty of the distiller under the law for which the surety on the distiller's bond would be liable up to the time when the warehousing bond is executed. It must be true, we think, that the surety on the distiller's bond is liable for the tax on spirits manufactured or produced in the event no warehousing bond is given. The case of Hart v. U. S., 95 U. S. 316, 24 L. Ed. 479, must be regarded as authority for the proposition that the surety would be liable for the tax under the circumstances just stated. It will also be observed, from the statement of facts found in that case, that the taxes assessed against the distiller, and sued for, were assessed against him on spirits which had been distilled and deposited in a bonded warehouse, and one of the defenses rested on the ground that the collector of internal revenue for that particular district had permitted a quantity of the spirits, more than sufficient to pay the taxes, to be removed from the bonded warehouse without the knowledge or consent of the sureties. Whether or

not the usual warehousing bond was demanded and executed does not appear from the statement of the case. The defense was overruled, and it was adjudged that the sureties on the distiller's original or official bond were liable for the tax, and final judgment was rendered accordingly.

In the case of the United States v. Bicket et al., 24 Fed. Cas. No. 14,590, the action was against the distiller and the sureties on his official distiller's bond, and conditioned, in the very language of section 3260, for the performance of all the duties prescribed by law in relation to the duties and business of a distiller, and the breach of the bond averred in the declaration was that the distiller "did not faithfully observe all the provisions of the law in regard to the duty of the distiller, in that he did not pay the tax which accrued against said distillery and upon the high wines manufactured by him therein," and the sureties were adjudged responsible on the bond for the tax thus accrued.

In the case of the United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131, the suit was again upon a distiller's bond, and the breach assigned was the nonpayment of the tax due on a specified number of gallons of spirits alleged to have been distilled at the distillery between certain dates, and final judgment was had in favor of the government against the principal and sureties upon the bond.

In view of these and other cases which might be cited, we think it is not open to question that the payment of the tax imposed upon spirits distilled during the period of the bond is a duty the performance of which is secured by the bond, and for a failure to discharge which the sureties are responsible; and it only remains to consider whether or not this bond is extinguished, or the sureties released, in consequence of the execution of a warehousing bond, when that is done pursuant to section 3296, which authorizes this to be done as part of the general scheme for the collection of taxes provided in the revenue laws.

We have referred to the original bond of the distiller as his official bond, for it was so characterized in the case of the United States v. Singer, 15 Wall. 111, 21 L. Ed. 49, and throughout the opinion referred to as "the official bond of the distillers and their sureties," although it is quite evident, in view of the nature of the subject, that such a bond is, in some respects, distinguishable from the ordinary official bond required of civil officers.

The question with which we now deal is whether or not the liability of the surety was extinguished by the execution of the warehousing bond. The law under which this bond was executed in order to obtain delay in payment of the taxes was, of course, in force at the time of the execution of the bond in question, and constituted a well-known part of the revenue scheme upon the subject. It is a familiar principle that sureties, when executing a bond, are presumed to know the law and to contract with reference to all of its provisions, which are, by construction, read into the contract, so far as they are material. This is true not only in regard to duties imposed by law in force at the time of the execution of the bond, but also with reference to duties subsequently imposed by legislative authority.

For example, in the case of the United States v. Powell, 14 Wall. 493, 20 L. Ed. 726, the facts were that the distiller had executed two bonds, and the action was upon both bonds, conditioned alike and in almost the very words of section 3260, and the action was against the distiller and the sureties upon both bonds. Subsequent to the execution of the first bond, and during the period of its term, Congress passed a resolution providing that:

"The proprietors of all internal revenue bonded warehouses shall reimburse the United States the expenses and salary of all store-keepers or other officers in charge of such warehouse."

The sureties, by plea, set up as a defense against recovery on the first bond that at the date of execution of said bond the government was, by law, bound to pay the storekeepers, and that the joint resolution of Congress could not increase the responsibility of the sureties after the date of execution of the bond. This defense was overruled, and it was adjudged that the sureties were liable for the performance of this additional duty to pay the expenses and salary of the storekeepers put in charge of the warehouse by the government. Mr. Justice Clifford, delivering the opinion of the court, said:

"Stronger language to signify an intention to stipulate that the principals in the bond should comply with duties subsequently imposed by law in relation to the business of a distiller could not well be employed, as the language of the bond is that they shall faithfully comply with all the provisions of law in relation to the duties and business of distillers, knowing, as all the obligors did, that Congress might at any time enact new provisions imposing new duties, or vary those already imposed. * * * Bonds in such cases, as well as in cases like the one before the court, are required to secure the faithful discharge of the duties ordinarily imposed upon the principal obligor, without reference to the time when the law was passed imposing the duty; and where, as in this case, the language of the bond is sufficiently comprehensive to embrace duties subsequently imposed, of a character corresponding with those required at the date of the bond, the construction which gives a prospective as well as a retrospective operation to the condition of the bond may well be adopted as both reasonable and just to all concerned."

In the closely related subject of revenue derived from customs duties, it is a well-settled principle under the customs duties acts of Congress that the right to duties accrues by the importation with the intent to unlade, and immediately upon the importation the duties become a personal charge and a personal debt against the importer, and a bond subsequently taken at the customs house to secure payment of these duties by the importer is not an extinguishment of the debt, but is merely collateral security for its payment. United States v. Lyman, F. C. No. 15,647, 1 Mason, 482.

The opinion in this case was by Mr. Justice Story, and, as might be expected, is exhaustive and instructive. Under the revenue act it was provided that the duties due from the importer "shall be paid or secured to be paid by bond." It was at the option of the importer to pay the duties, and at once take the goods imported, or to deposit such goods and secure their payment by bond, just as a distiller may pay the tax due on the distilled product, or deposit the same in a warehouse and secure delay in the payment by the execution of

bond. In relation to the effect of such a bond executed under the customs duties act, Mr. Justice Story in the case referred to said:

"But I am prepared to go yet farther, and to hold that a bond given under the revenue act of 1799 [Act March 2, 1799, c. 22, § 62, 1 Stat. 673], by the importer himself, and a fortiori by a third person (if legal), would not extinguish the original debt created by the act of importation. I admit the doctrine that in general a higher security taken from the debtor himself extinguishes the original contract. But this proceeds upon a presumption of law that it is taken in satisfaction of the original debt; for, if it appear otherwise upon the face of the security, it will not operate as an extinguishment. Thus, a bond of the debtor, with sureties, or a mortgage, may be taken as collateral security for the payment of a promissory note, and in such case it certainly does not extinguish the demand on the note. My opinion, therefore, that a bond taken under the revenue act of 1799 is not an extinguishment of the debt accruing by the importation of the goods is founded, not upon the notion that the debts are of the same nature and dignity, but upon the intent and language of the statute iself. It provides that within fifteen days after the arrival of the goods the importer may enter the goods, pay the duties at once, or give bond, with sufficient sureties, to secure the payment of the duties at a future period; or otherwise the goods are to be deposited in the stores of the government, as a security for such payment. * * * And throughout the whole act the bond is uniformly termed a bond to secure the duties, and not a bond in payment of the duties. If, therefore, the statute intended the bond as a mere security for the duties (and this intention is proved irresistibly to my mind) there is an end to the whole question; for in no case can a higher security operate an extinguishment against the plain import of the statute under which it is taken."

It is to be kept in mind that the revenue laws, in relation to bonds required as well as in other respects, are not to be regarded as penal, and therefore to be strictly construed, but as remedial, and to be liberally construed, in order to give full effect to the purposes of their enactment. United States v. Hodson, 10 Wall. 406, 19 L. Ed. 937; United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555.

It has been said again and again in the adjudged cases that the tax on distilled spirits attaches as soon as the spirits come into existence, and it is plainly evident, as we have seen, that the surety on a distiller's bond is liable for this tax, which it is a duty, under the law, of the distiller to pay, unless that duty or obligation to pay, or debt, as it is otherwise called, is extinguished by the execution of a warehousing bond, when such bond is executed instead of immediate payment, in order to obtain delay in the payment of the taxes by storing the distilled spirits in a bonded warehouse, as may be done under the act. The distiller's official bond is required; the tax is made a lien on the distilled spirits and certain other property of the distiller; and, in the event delay in payment is desired, the additional warehousing bond is required—all pursuant to the manifest purpose of Congress to make certain that the government will receive the tax imposed, so far as full legislation upon the subject can accomplish that purpose.

In view of this purpose, the reasonable construction is that the distiller's bond was required to be executed in broad terms, which imposed upon the distiller and his surety the obligation to discharge every duty resting upon the distiller under the law, including the duty to pay the tax on distilled spirits, and that the warehousing bond required, in order that the distiller may obtain delay in the payment of this debt, is required pursuant to this purpose, as additional se-

curity, and the execution of the warehousing bond was not intended to extinguish the liability of the distiller or his surety on the first bond.

Congress, in providing for the somewhat extended delay, covering years, during which the tax might be paid on spirits thus deposited in a warehouse, could not have been unmindful of the lesson of common experience, that in consequence of death and business reverses during such a period of time the official distiller's bond might become worthless as security, just as happened in regard to the warehousing bond executed to secure the tax now in question. It was but the suggestion of common business prudence, when delay was granted in the interest of the distiller, to do so only upon condition of his giving security for the tax in addition to that which already existed under the duty to pay the tax immediately, and the requirement of cumulative security, by additional bond, affords no just ground for the contention that Congress thereby manifested any intention to extinguish the liability, or release the obligors, either principal or surety, under the original bond. And the general rule is that a later statute will not be held to disturb the provisions of a former law by implication, when there is not a clear repugnancy.

The proposition is that the second bond was not successive, but cumulative; that the first bond continued in force as a security for the discharge of the duty, as at first contemplated; and that the additional or warehousing bond was intended as additional security for the discharge of a specifically named one of the duties covered by the first bond.

Mr. Justice Gray, speaking for the court, in the case of United States v. Witten, 143 U. S. 78, 12 Sup. Ct. 372, 36 L. Ed. 81, said:

"The deposit of the spirits in the warehouse was solely for the benefit of the distiller, and to enable him to give bond for the payment of the tax on the spirits, instead of paying the tax at once. The government assumed no responsibility to him for their safe-keeping. If he was not satisfied with the security of the warehouse, he had only to take any measure, consistent with the access and supervision of the revenue officers, to make it more secure, or else to pay the tax and remove the spirits."

The statutes upon this subject provide a complete plan, or scheme, for the collection of the tax imposed on distilled spirits, and the construction of them which we have thus indicated is in accordance with a construction given to them in their practical administration by the Treasury Department, as will appear from Treasury Decisions (1899), vol. 1, No. 20,920, in the matter of warehousing and distillers' bonds. The construction by that department was and is that suit can be maintained on the distiller's bond to recover the tax on spirits when the principal and surety on the warehousing bond are insolvent. The view is also expressed that the remedy on the warehousing bond should be exhausted before resort is had to the distiller's bond.

The construction of a revenue statute by the Treasury Department, "though not controlling, is not without weight, and is entitled to respectful consideration." Smythe v. Fiske, 23 Wall. 382, 23 L. Ed. 47. The weight of a contemporaneous construction of a statute which admits of doubt, by those charged with its execution, has been recognized and declared in many cases. United States v. Johnston,

124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389; United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890; Pennoyer v. McConnaughy, 140 U. S. 23, 11 Sup. Ct. 699, 35 L. Ed. 363. We think the construction of the revenue laws thus indicated is sound in principle, and supported by well-considered cases, which furnish a close analogy. We conclude that the United States was entitled to judgment for such taxes as accrued upon the spirits manufactured by the distiller during the period of his official bond, and that there was error in the ruling and judgment of the court below.

The judgment of that court is accordingly reversed and the case remanded for further proceedings not inconsistent with the opinion of this court.