**BAUMAN v. CARTER, Former Collector of Internal Revenue.**

(District Court, S. D. California, S. D. August 16, 1926.)

No. 1804.

1. **Internal revenue ⬥⟳12—Brandy stolen from fortifying room of bonded winery, while it was locked and key held by government officer, held not taxable; "fortifying room;" "distillery or other bonded warehouse" (Willis-Campbell Act, § 5 [Comp. St. Ann. Supp. 1923, §§ 10138⅝d, 10138⅝e]; Rev St. § 3271 [Comp. St. § 6009]; Act Feb. 24, 1919, § 617 [Comp. St. Ann. Supp. 1919, § 6114]; Act March 3, 1877 [Comp. St. §§ 6039–6049]; Act Aug. 27, 1894, §§ 51, 52 [Comp. St. §§ 6058, 6059]).**

Fortifying room of bonded winery, which is place built for deposit, storage, and use of brandy when used to fortify wine, on which internal revenue tax has not been paid, held "distillery or other bonded warehouse," within Willis-Campbell Act, § 5 (Comp. St. Ann. Supp. 1923, §§ 10138⅝d; 10138⅝e), in view of Regulations 28, p. 1, Revision 1918 of Treasury Department, pp. 14, 43, par. (b), §§ 4, 5, 24, and Rev. St. § 3271 (Comp. St. § 6009), so that brandy stolen therefrom while it was locked and key held by government officer was not taxable under Act Feb. 24, 1919, § 617 (Comp. St. Ann. Supp. 1919, § 6114), since a "warehouse" is a structure used to store goods in, and "other bonded warehouses" are not limited to general warehouses provided for by Act March 3, 1877 (Comp. St. §§ 6039–6049), Act Aug. 27, 1894, §§ 51, 52 (Comp. St. §§ 6058, 6059).

[Ed. Note.—For other definitions, see Words and Phrases, First Series, "Distillery Bonded Warehouse;" First and Second Series, "Warehouse."]

2. **Internal revenue ⬥⟳24.**

Test whether warehouse is bonded within Willis-Campbell Act, § 5 (Comp. St. Ann. Supp. 1923, §§ 10138⅝d, 10138⅝e), is whether government has taken control and exercises dominion over premises.

Action by Jacob Bauman against John P. Carter, Former Collector of Internal Revenue for the Sixth District of California. Judgment for plaintiff.

Daniel J. Chapin, of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., and Donald Armstrong, Asst. U. S. Atty., both of Los Angeles, Cal., for defendant.

McCORMICK, District Judge. This is an action at law wherein plaintiff sues defendant as collector of internal revenue to recover $1,805.98 with interest from April 26, 1921. Plaintiff was required to pay said principal amount as taxes due on 820.9 proof gallons of grape brandy, assessed at the rate of $2.20 per gallon under section 600 of an Act approved February 24, 1919 (40 Stat. 1057 [Comp. St. Ann. Supp. 1919, §§ 5986e–5986i]). The payment was made involuntarily and under protest and solely to avert the imposed penalties provided in said act and to avoid the distraint of plaintiff's property which was threatened by defendant. A claim for abatement and refund was duly made by plaintiff on the ground that the taxes were illegally collected, and as to the principal amount sued for herein the claim was disallowed and rejected by the Commissioner of Internal Revenue and by defendant collector. The claim to refund was made, and this action was brought under section 5 of an act supplemental to the National Prohibition Act, known as the Willis-Campbell Act (42 Stat. 222 [Comp. St. Ann. Supp. 1923, §§ 10138⅝d, 10138⅝e]), and the part of said act applicable to this case is as follows:

"If distilled spirits upon which the internal revenue tax has not been paid are * * * lost by theft from a distillery or other bonded warehouse, and it shall be made to appear to the Commissioner that such losses did not occur as the result of negligence, connivance, collusion, or fraud on the part of the owner or person legally accountable for such distilled spirits, no tax shall be assessed or collected upon the distilled spirits so lost, nor shall any tax penalty be imposed or collected by reason of such loss, but the exemption from the tax and penalty shall only be allowed to the extent that the claimant is not indemnified against or recompensed for such loss. This provision shall apply to any claim for taxes or tax penalties that may have accrued since the passage of the National Prohibition Act or that may accrue hereafter. Nothing in this section shall be construed as in any manner limiting or restricting the provisions of title III of the National Prohibition Act."

The litigants have filed a written stipulation of facts so that there is no issue of fact to be decided. It is admitted that the brandy upon which the tax was assessed and collected was legally manufactured and lawfully deposited by plaintiff in a legitimate and authorized fortifying room on the premises of bonded winery No. 5 at Lankershim in the Sixth district of California. Plaintiff was the lawful proprietor of such bonded winery and premises as well as the lawful owner of such brandy. The brandy was securely placed and deposited in the fortifying room of the bonded winery premises on November 15, 1920, and the only door to such fortifying room was securely locked by a regulation government lock attached by an agent of the government and by direction of defendant collec-

tor, and the key to said door and fortifying room was kept by the government officer at all times. Some time in the early hours of the evening of November 15, 1920, after the fortifying room in which the brandy was deposited had been securely locked as aforesaid, the door thereof was forced open by parties unknown to either plaintiff or defendant, and the brandy deposited therein was stolen therefrom by parties unknown to either plaintiff or defendant. There is no intimation or contention that the theft and loss of the brandy was the result of negligence, connivance, collusion, or fraud of plaintiff in any manner. On the contrary, it is admitted that he was entirely innocent in the matter. No jurisdictional issue is raised by the parties.

[1] The briefs of counsel concede that the only question for decision is whether the fortifying room of a bonded winery is a "distillery or other bonded warehouse" within the meaning of section 5 of the Willis-Campbell Act, supra, and it is agreed that, if the brandy was taxable, the proper amount of tax was assessed and paid.

A fortifying room is an inclosed place on the premises of a bonded winery, designated and built under the supervision of the Commissioner of Internal Revenue and the collector of internal revenue of the district in which such bonded winery is located for the deposit, storage, and use of brandy, when used to fortify wine, upon which the internal revenue tax has not been paid. The government tax must be paid before the fortified wine leaves the fortifying room. Such a place is undoubtedly a "warehouse" according to common usage and meaning. Webster's New International Dictionary defines "warehouse" as "a storehouse for wares and goods; a receiving house." When broadly used, the term includes any structure used to store goods in. The term is specifically used respecting taxable and dutiable commodities when such are placed in the government stores or bonded warehouses to be kept until the taxes or duties are paid.

The regulations of the Treasury Department further persuade one to the belief that fortifying rooms on bonded winery premises are regarded by the government as storerooms and warehouses. See Regulations 28, pt. I, Revision 1918, p. 14, par. (b). And an examination of the statutes relative to distillery warehouses (section 3271, Revised Statutes [Comp. St. § 6009]), and a comparison with statutes authorizing, defining, and providing for the fortifying room in a bonded winery (section 617, Act of February 24,

1919, 40 Stat. 1057 [Comp. St. Ann. Supp. 1919, § 6114]), and also with sections 4 and 5 in Regulations 28, pt. I, Revision 1918 of Treasury Department, clearly shows that the requirements, construction, control, and purposes of the fortifying room of a bonded winery are substantially the same as those of a distillery warehouse, and similar as well to the general and special bonded warehouses.

There is one paramount purpose and use common to all of such places; namely, that each of such places or depositories are used for the storage of goods until the taxes are paid thereon. The mere fact that the brandy is mixed and intermingled with the wine in the fortifying room does not alter or destroy the storage or warehouse feature of such room. It is true that it is a place of manufacture, but it is nevertheless a warehouse, because the wine and the brandy are stored therein before being mixed and intermingled, and the Treasury regulations expressly provide that the fortifying room is to be used as a warehouse or storeroom for all the brandy necessarily left over after fortification has taken place. There is no substantial difference, in so far as storage use is concerned, between distillery warehouses and fortifying rooms in bonded wineries. Section 24 of Regulations 28, pt. I, Revision 1918, p. 43, of the Treasury Department, furnish additional strong reasons to believe that the Internal Revenue branch of the government considers the fortifying room as a bonded warehouse for the storage of brandy to be used in fortifying wine when it provides for the abatement of taxes when such brandy is lost through casualty while in the custody of the officers of the Internal Revenue, which is always the case when the brandy is on lawful deposit in the fortifying room.

[2] I have not been cited to any adjudication wherein the precise question for decision in this case has been considered, and an independent investigation has disclosed no applicable judicial precedent. The true test as to whether a warehouse is bonded appears to be as to whether the government has taken control of the storehouse or warehouse and exercises dominion over the premises. See United States v. Powell, 14 Wall. 493; 20 L. Ed. 726. The fortifying room of the bonded winery involved in this action, at the time the brandy was stolen and lost, was under the control of the government for the sole purpose of insuring, facilitating, and enforcing the payment of taxes due on the brandy that had been lawfully deposited therein under the supervision and direction of the government. These facts and circumstances constitute such

fortifying room nothing less or different than a bonded warehouse within the meaning of section 5 of the Willis-Campbell Act, supra. And, as has been already suggested, the fortifying room has all the essential marks of a distillery warehouse. But, assuming, without admitting, that there is a real distinction between a distillery warehouse referred to in section 5 of the Willis-Campbell Act and the fortifying room of a bonded winery, nevertheless the fortifying room clearly falls within the category of "other bonded warehouse" referred to in said act.

I am unable to agree with the government's contention that the only warehouses referred to in the act in question, under the phrase "other bonded warehouse," are the special and general warehouses provided for by the Act of March 3, 1877, as amended (19 Stat. 393 [Comp. St. §§ 6039–6049]), pp. 251 and 252 of the Compilation of Internal Revenue Laws of 1920, and sections 51 and 52 of the Act of August 27, 1894 (28 Stat. 509 [Comp. St. §§ 6058, 6059]), for it would appear that Congress has provided that manufacture may be carried on upon the premises of a bonded warehouse and to a much greater extent than in a fortifying room and the place of manufacture still remain a warehouse. See Denatured Alcohol Act of June 7, 1906 (34 Stat. 217); Bottle in Bond Act of March 3, 1897 (29 Stat. 626 [Comp. St. §§ 6070–6077]); and the Amendment to section 3221, Revised Statutes, by section 6, Act of March 1, 1879 (20 Stat. 327), applying to losses of spirits in cistern rooms of distilleries. All of these statutes provide for allowances of losses by casualty of spirits stored in these places in accordance with the provisions of section 3221, Revised Statutes (Comp. St. § 5945).

In the statutes relating to the establishment of the various depositories and places referred to in these acts of Congress, the same precautions and requirements are found as exist in the laws establishing distillery warehouses or special or general bonded warehouses. The same general requirements as to construction, supervision, and control by the government appears in all of these laws, just as it appears in the statutes respecting the establishment and maintenance of fortifying rooms on bonded winery premises, and no reason is apparent to me why a loss by casualty in a fortifying room should not have the benefit of the remedial provisions for the exemption from tax and penalty contained in section 5 of the Willis-Campbell Act, supra.

Findings and judgment for the amount sued for, together with interest, are ordered for plaintiff, and counsel for plaintiff will prepare same in accordance with the rules of this court.