## The Collector *v.* Beggs.

Under the 20th section of the act of July 20th, 1868, entitled "An act imposing taxes on distilled spirits," &c., in the absence of a distiller's having appealed to the Commissioner of Internal Revenue (as under the 10th section of the act he may do), for the correction of any error made by the assessor in fixing the "true producing capacity" of his distillery, it is lawful for the government to assess and collect, as for a deficiency, the taxes upon the difference between the said "producing capacity" as estimated by the assessor and the amount of spirits actually produced by such distillery, even though the distiller have in good faith reported and paid taxes upon his whole production, and though such production have exceeded 80 per centum of the producing capacity aforesaid.

Error to the Circuit Court for the Southern District of Ohio; the case being thus:

The 10th section of the "Act imposing taxes on distilled spirits," &c., approved July 20th, 1868,* enacts:

"That every assessor shall proceed at the expense of the United States, with the aid of some competent and skilful person to be designated by the Commissioner of Internal Revenue, to make survey of each distillery registered for the production of spirits in his district, to estimate and determine its true producing capacity, &c., a written report of which shall be made in triplicate, signed by the assessor and the person aiding in making the same, one copy of which shall be furnished to the distiller, one retained by the assessor, and the other immediately transmitted to the Commissioner of Internal Revenue. If the

---

* 15 Stat. at Large, 129.

Commissioner of Internal Revenue shall at any time be satisfied that such report of the capacity of a distillery is in any respect incorrect or needs revision, he shall direct the assessor to make in like manner another survey of said distillery."

The 19th section of the same act makes it the duty of every distiller, on the 1st, 11th, and 21st days of each month, or within five days thereafter, " to render to the assistant assessor an account in duplicate, taken from his books, stating the quantity and kind of materials used for the production of spirits each day, and the number of wine gallons and of proof gallons of spirits produced and placed in warehouse."

The 20th section proceeded thus :

" On receipt of the distiller's first return in each month, the assessor shall inquire and determine whether said distiller has accounted, in his returns for the preceding month, for all the spirits produced by him ; and to determine the quantity of spirits thus to be accounted for, the whole quantity of materials used in the production of spirits shall be ascertained; and forty-five gallons of mash or beer, brewed or fermented from grain, shall represent not less than one bushel of grain; and seven gallons of mash or beer, brewed or fermented from molasses, shall represent not less than one gallon of molasses.   In case the return of the distiller shall have been less than the quantity thus ascertained, the distiller or other person liable shall be assessed for such deficiency at the rate of fifty cents for every proof gallon, together with the special tax of four dollars for every cask of forty proof gallons, and the collector shall proceed to collect the same as in cases of other assessments for deficiencies ; but in no case shall the quantity of spirits returned by the distiller, together with the quantity so assessed, be for a less quantity of spirits than 80 per centum of *the producing capacity of the distillery as estimated under the provisions of this act."*

In September, 1868, soon after the statute took effect, an assessor addressed the Commissioner of Internal Revenue at Washington for instructions on the subject of how the true "producing capacity" of a distillery under section 10 of the above-quoted act was to be determined.

The commissioner thus replies to him:

"In determining the true producing capacity of a distillery under the said section, it makes no difference whether the distillery is proposed to be run one, ten, or twenty-four hours, nor what number of bushels the distiller proposes to mash per day.

"You are to determine, first, what number of bushels of grain can be mashed and fermented in twenty-four hours; and second, what quantity of spirits can be produced in twenty-four hours.

"What you are to determine is the absolute producing capacity, without deduction for any cause; you must estimate the maximum quantity of spirits which can be produced by the distiller, supposing him to run continuously for twenty-four hours.

"The number of bushels which you determine upon these principles can be mashed and fermented in twenty-four hours, is the basis upon which you will assess the *per diem* capacity tax imposed by section. 13.*  The number of bushels so determined, multiplied by the quantity of spirits which can under all circumstances (all the apparatus and machinery being in good order) be produced in the distillery from a bushel of grain, will give the quantity of spirits which can be produced in twenty-four hours; and this is the basis of the examination to be made by you monthly of his return under section 20.

"If his returns exceed 80 per cent. of this, no assessment is necessary, unless it shall appear that his actual production is in excess of his returns."

In this state of things one Beggs, a distiller, made true and correct reports for the months of September, October, and November, 1868, of all the spirits by him *actually* produced.  The amount of such spirits, so reported, exceeded 80 per centum of the producing capacity of the distillery of plaintiff for the said months respectively.

He also paid all the taxes assessable against him for such product so reported.

But by a survey of the distillery, which had been made in pursuance of the above-quoted section 10 of the act of July

---

* This was a tax of $2 per day on every distiller whose distillery had an aggregate capacity for mashing and fermenting twenty bushels of grain or less, or sixty gallons of molasses or less, in twenty-four hours, &c.—REP.

20th, 1868, and in force during the said months of September, October, and November, 1868, the distillery was estimated to be capable of producing from each bushel of grain used three and one-quarter gallons of spirits.

' The amounts reported by Beggs as having been produced at his distillery during the said months was less than three and one-quarter gallons for each bushel of grain by him used during that time.

Hereupon the assessor, maintaining that Beggs was bound to pay taxes upon the amount of three and one-quarter gallons for each bushel of grain used by him during those months, assessed him upon the difference between the amount reported in his returns aforesaid and the said estimated product of three and one-quarter gallons per bushel as fixed and determined in the survey; and made return of this assessment to the collector.

On demand made by the collector, Beggs paid under protest the sum assessed, and having made application for repayment of it to the Commissioner of Internal Revenue, who refused to repay it, he brought suit in the court below against the collector, one Stevenson, to recover it.

The court found the facts above stated and held the assessment illegal, and the plaintiff entitled to recover.

Judgment being entered accordingly, the collector brought the case here.

*Mr. C. H. Hill, Assistant Attorney-General, for the collector, plaintiff in error:*

The judgment below was plainly wrong under the act. The distiller used so much grain; this the case admits. He did not, in fact, get from it all which the assessors had, in fixing the "true producing capacity" of his distillery, fixed as the amount which he could have got. But that cannot now be helped. They fixed (if indeed the distiller did get all that was possible from his distillery) the true producing capacity too high. And he ought at once to have appealed, as the 10th section allowed him to do, to the Commissioner of Internal Revenue. That section provides a complete sys-

tem for measuring the producing capacity of a distillery, and for correcting any errors made in such measurement. Any error which is made by the assessors must be corrected in the manner pointed out, namely, by the appeal. Then a new estimate may be made. But section 20 would seem to place the question beyond a doubt. The 80 per cent. therein required to be assessed is the "80 per centum of the producing capacity of the distillery, *as estimated under the provisions of this act,*" namely, under section 10.

The case falls within the principle established in many States, that an action will not lie to recover back a tax imposed on an overvaluation of property where the statutes provide a remedy for the correction of any errors made by assessors in valuing property.*

*Messrs. J. D. Cox and H. L. Burnett, contra:*

1. The general *object* of the act is stated in the first clause of the 20th section. It is to "determine whether said distiller has accounted in his returns for the preceding month, for all the spirits produced by him." It is therefore not the purpose of the law to treat the distiller unfairly, nor to tax him upon spirits which he does not produce, but only to ascertain his actual production by a reasonably certain rule, and to prevent fraud in his returns.

2. The *basis of calculation* is stated in the next clause, to wit: "To determine the quantity of spirits thus to be accounted for, the whole quantity of materials used for the production of spirits shall be ascertained."

In this case, it is part of the case as found, that Beggs's reports were "true and correct."

3. The next clause gives a *means of estimating* the quantity of materials used.

4. We have next the provision, that, if the distiller has returned a less quantity of grain used than this test would show, he shall be assessed for the deficiency, and the assessment shall be collected.

---

* Ontario Bank *v.* Bunnell, 10 Wendell, 186; Osborn *v.* Danvers, 6 Pickering, 98; Howe *v.* Boston, 7 Cushing, 273.

5. The section ends with the proviso, that ".in no case shall the quantity of spirits returned by the distiller, together with the quantity so assessed, be for a less quantity of spirits than 80 per centum of the producing capacity of the distillery, as estimated under the provisions of this act."

The "producing capacity" is estimated, in the quantity of spirits *per bushel* of grain which the apparatus can make; but in this last clause the gross quantity found by multiplying the product per bushel into the whole number of bushels fermented, is, by a natural substitution, used instead of the circumlocution which would otherwise be necessary.

Taking the several clauses together, it is manifest that no margin or latitude whatever is allowed the distiller as to the *quantity of grain used.* He must report the whole. He cannot even use his discretion in making the mash in his tubs thinner than it will be by using one bushel of grain to every forty-five gallons of the mixture which his vats will contain. He is charged with the use of the quantity of grain which is indicated by this measurement of his vats, and he must use this quantity or bear the loss; for, if he returns less, the assessor must charge him with the deficiency, estimate the gallons of spirits the grain would make, and taxes for that also must be collected from him.

The only latitude allowed is contained in the last clause, known as the eighty per cent. clause. His total product in spirits must not be less than eighty per cent. of what the whole quantity of grain used will make, at the rate per bushel fixed by the official estimate of the "producing capacity" of his apparatus. The twenty per cent. is the maximum allowance to cover the variation in quality of grain, or the accidents or unskilfulness of manufacture.

Mr. Justice STRONG delivered the opinion of the court.

The twentieth section of the act of Congress in question prescribed a mode for the ascertainment of the quantity of spirits for which a distiller was required to account in his monthly returns to the assessor. By a previous section the distiller was required to make a return, but the twentieth

section made it the duty of the assessor, on the receipt of the distiller's first return in each month, to inquire and determine whether he had accounted, in his return for the preceding month, for all the spirits produced by him, and, to determine the quantity of spirits thus to be accounted for, it required that the whole quantity of materials used for the production of spirits should be ascertained. It gave also a rule by which the quantity of materials used for the production of spirits should be ascertained and settled by the assessor, and it then enacted that in case the return of the distiller had been less than the quantity thus ascertained, he should be liable to be assessed for such deficiency, at the rate of fifty cents for every proof gallon, together with the special tax of $4 for every cask of forty proof gallons, which the collector was required to collect. It also enacted that in no case should the quantity of spirits returned by the distiller, together with the quantity so assessed, be less than 80 per centum of the producing capacity of the distillery, as estimated under the provisions of the act.

The next preceding section (the 19th) made it the duty of every distiller, on the 1st, 11th, and 21st days of each month, or within five days thereafter, to render to the assistant assessor an account in duplicate, taken from books he was required to keep, stating not only the number of wine gallons and of proof gallons of spirits produced and placed in warehouse, but also the quantity and kind of materials used for the production of spirits each day.

The purpose of these requisitions, as well as of many others made by the statute, was obviously to guard against fraudulent returns, and to secure to the government a tax upon all spirits produced, and upon all which might have been produced from the quantity of materials used. Hence the distiller was required to return, not merely the amount of his product, but the kind and quantity of materials used by him, and the assessor was directed to test the accuracy of that return, and to estimate, from the quantity of materials ascertained by him to have been used, the number of gallons of spirits which should have been accounted for.

The quantity of materials used, as ascertained by the assessor, was made a measure of production, and upon all spirits ascertained *by that measure* to have been produced, either actually or potentially, the distiller was expressly required, by the twentieth section, to pay the tax, without any reference to his return, or to what had been actually produced. In no case could he escape from liability to pay a tax on at least 80 per centum of what his distillery was estimated to be capable of producing, but if he produced more, or if the quantity of materials which he had used, as ascertained and determined by the assessor, showed that his production had been or should have been greater, he was subjected to the required tax on the quantity of spirits which that ascertained quantity of materials was capable of producing, and not merely upon 80 per centum of that quantity. This was the unequivocal language of the act. Thus the quantity of materials used, *as ascertained by the assessor*, and not the actual product of spirits, was made the measure of liability to taxation and of its extent.

This construction of the 20th section is in entire harmony with all the other parts of the act. The 10th section directed a survey of every distillery registered, or intended to be registered, for the production of spirits, in order to estimate and determine its true producing capacity. This survey was required to be made by the assessor of the collection district, with the aid of some competent and skilful person, to be designated by the Commissioner of Internal Revenue. The mode in which the producing capacity of the distillery was to be ascertained, as prescribed by the regulations of the commissioner, was by measuring each mash, or fermenting tub—by calculating how many bushels of grain, when mashed (if grain was used), the fermenters would hold, by considering the period of fermentation, and deducing therefrom the number of bushels which could be fermented in twenty-four hours. This ascertained, the assessor and his assistant were directed to estimate the quantity of spirits that could be produced in the distillery from a bushel of grain, and multiplying that by the number of bushels that

could be fermented therein in twenty-four hours, the producing capacity of the distillery was to be ascertained and fixed as a standard of taxation, or rather to determine the minimum of taxation. At all events the distiller was made taxable for a production of spirits not less than 80 per cent. of the producing capacity of his distillery, as determined by the survey, whether that quantity was actually produced by him or not; or whether he used a bushel of grain or not. Eighty per cent. of the estimated (not the actual) capacity of the distillery was the smallest amount for which he was made taxable. But if he actually produced more, or if the quantity of grain or other materials used for distillation, as ascertained by the assessor, showed a larger production, he was made taxable to the full extent of that production thus shown. No other interpretation can be given to the 20th section.

Now, applying this to the facts of this case as found by the Circuit Court, it becomes very evident that the judgment should have been given for the defendant below.

It is true the actual production of spirits for the three months, September, October, and November, 1868, as returned by the plaintiff below, and correctly returned, was more than 80 per cent. of the producing capacity of his distillery for those three months. Whether it was more than 80 per cent. of the producing capacity, *as determined by the survey, provided for in the tenth section of the act,* is not found, nor is it material. It is found that by reason of the survey made in pursuance of that section, the distillery was estimated to be capable of producing from each bushel of grain used, three and one-quarter gallons of spirits; that the quantities reported by the plaintiff, as having been produced during those three months, were less than three and one-quarter gallons for each bushel of grain used by him during that time, and that the additional assessment made, of which he complains, was for the difference between the quantity reported in his returns and the estimated product of three and one-quarter gallons for each bushel of grain used, the possible production determined by the survey.

Such being the facts, as found, the plaintiff was expressly declared by the 20th section to be assessable for the difference between his return and the estimated possible product, and it was made the duty of the collector to collect it.   The survey and estimate of producing capacity made under the 10th section were conclusive, while they remained, though subject to revision, under the direction of the Commissioner of Internal Revenue.   And the extent of liability to taxation was, under the act of Congress, directed to be measured, not by the actual product of spirits, but by what should have been the product of the materials used, according to the estimate made under the 10th section.

It follows that the assessment made was legal, and that the plaintiff is not entitled to recover.   The Circuit Court, therefore, erred in giving judgment for the plaintiff.

JUDGMENT REVERSED, and the record remitted with instructions to enter

JUDGMENT FOR THE DEFENDANT.