UNITED STATES v. BALL et al.

(Circuit Court of Appeals, Fourth Circuit. July 17, 1908.)

No. 800.

INTERNAL REVENUE — TAX ON DISTILLED SPIRITS — ASSESSMENT ON DISTILLER FOR DEFICIENCY OF PRODUCTION.

Under Rev. St. § 3309, as supplemented by Act March 1, 1879, c. 125, § 6, 20 Stat. 340, and Act May 28, 1880, c. 108, § 8, 21 Stat. 147 (U. S. Comp. St. 1901, p. 2158), which require a distiller to pay internal revenue tax on spirits to the amount of at least 80 per cent. of the capacity of his distillery as estimated according to law, he cannot be relieved from the payment of any part of such tax because the materials used by him are of such inferior quality or condition that they will not produce such percentage; but, where he is a fruit distiller within the proviso of said supplemental acts, an assessment for the deficiency cannot be made against him unless the notice of such deficiency thereby required shall have been given him by the commissioner within six months after receipt of his monthly report, and an assessment made without such notice is void.

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Wilkesboro.

A. E. Holton, U. S. Atty.

Before PRITCHARD, Circuit Judge, and WADDILL, and DAYTON, District Judges.

PRITCHARD, Circuit Judge. This was a civil action tried at the May term, 1905, of the United States Circuit Court at Wilkesboro. The United States brought suit against the defendants, upon the distiller's bond of William T. Ball, upon which William T. Ball was principal, and Thomas W. Collins and Squire M. Dickerson were sureties. The breach of the bond complained of was the failure of the said Ball to comply with the provisions of the law, in that he refused to pay an internal revenue tax assessed against him to the amount of $89.70 for spirits produced by said Ball during the months of August and September, 1900, on which the law required to be produced by him under the producing capacity of his distillery; the distillery in question being a brandy distillery.

It was agreed that the following special verdict be drawn up and filed in the case:

Special Verdict.

United States of America, Western District of North Carolina, District Court, at Wilkesboro, N. C., May Term, 1905.

United States v. W. T. Ball et al. Special Verdict.

The following issues have been submitted to the jury, viz.: (1) Did the defendant execute the bond sued on? (2) Is there a breach thereof? (3) What, if anything, is due the plaintiff thereon?

The jury finds the following special verdict: That the defendant duly executed the bond, and operated a fruit distillery thereunder during the months of August and September, 1900. That the survey which was accepted by the defendant, W. T. Ball, fixed the daily producing capacity at 42.84 gallons per day of 24 hours work. That during the month of August said distillery operated 97 hours, and used and distilled 1,687 gallons of apple pomace, and produced 146 gallons of brandy, 100 proof, upon which the tax was paid, and that during the month of September, the defendant operated said distillery

180 hours, and used and distilled therein 3,175 gallons of pomace, and produced therefrom 168 gallons of apple brandy, 100 proof, upon which the tax was paid. That the defendant produced and tax paid all the spirits from the pomace used, and distilled in said distillery during the above-named period, which was capable of being produced on the said pomace. The fruit being of an inferior quality and condition for quick distillation, that calculating the hours of time worked upon the basis of 24 hours per day and the capacity of the distillery at 42.84 gallons per day, we find that the defendant failed to produce 80 per cent. of his capacity, which deficiency amounts to 81.7 gallons, and the tax thereon amounted to $89.90, assessed on April list, 1901. That counting the material used for the two months as a whole, as he was so assessed, he produced and paid tax upon 24.8 gallons more than the 80 per cent. required. There was no evidence that the defendant had notice from the collector of the above-named deficiency until after the assessment was made, and the assessment was based upon the survey of the returns of the distiller.

Upon the forgoing facts, if the court shall be of opinion that the defendants are liable, then the jury finds that there was a breach of the bond, and that the defendants are indebted to the plaintiffs thereon in the sum of $89.90, with the penalty and the interest as the court may adjudge; otherwise we answer the second issue "No," and the third issue "Nothing."

## Upon which special verdict the following judgment was rendered:

### Judgment.

Filed in this office September 20, 1907.

Milton McNeill, Clerk.

In the Circuit Court of the United States, Fourth Circuit, May Term, 1907, Adjourned to September 16, 1907.

### United States v. W. T. Ball and Others.

This cause coming on to be heard at this term of the court, and being heard upon the special verdict found by the jury at May term, 1905, and upon the facts therein found. the court holds that there was no breach of the bond, and the plaintiff is entitled to recover nothing. Whereupon it is on motion of Finley and Hendren, attorneys for the defendant, adjudged that the plaintiff recover nothing, and that the action be dismissed.

The only question presented is as to whether the facts found in the special verdict entitled the defendant to the relief granted by the court below. The learned judge who tried the case below based the judgment of the court on the fact:

"That the defendant produced and tax paid all the spirits from the pomace used and distilled in said distillery during the above-named period, which was capable of being produced on the said pomace. The fruit being of an inferior quality and condition for quick distillation, that calculating the hours of time worked upon the basis of 24 hours per day and the capacity of the distillery at 42.84 gallons per day, we find that the defendant failed to produce 80 per cent. of his capacity, which deficiency amounts to 81.7 gallons, and the tax thereon amounts to $89.90 assessed on April list, 1901. That counting the material used for two months at a whole as he was so assessed he produced and paid tax upon 24.8 gallons more than the 80 per cent. required."

It was also found by the jury that the survey of said distillery fixed the daily producing capacity at 42.84 gallons per day of 24 hours work; that during the month of August said distillery operated 97 hours, and used and distilled 1,687 gallons of apple pomace, and produced 146 gallons of brandy, 100 proof, upon which the tax was paid, and that during the month of September the defendant operated said distillery 180 hours, and used and distilled therein 3,175 gallons of pomace, and

produced therefrom 168 gallons of apple brandy, 100 proof, upon which the tax was paid. The assessment against the distillery was based upon the survey of the distillery that had been accepted by the distiller, which, among other things, provided that the distiller should be liable for taxes on 80 per cent. of the producing capacity of his distillery, the capacity being determined on the basis of 1 gallon of spirits for every 14 gallons of pomace used.

Section 3309, Rev. St. (U. S. Comp. St. 1901, p. 2158), among other things, provides that the actual product of a distillery to be assessed shall in no case be less than 80 per cent. of the producing capacity of the distillery as estimated according to law. Adopting the method provided by this section, by computing the number of hours worked on the basis of 24 hours per day, we find that the defendant failed to produce 80 per cent. of his capacity, and that such deficiency amounts to 81.7 gallons; the tax on the same being $89.90. As heretofore stated, the court below ruled that, inasmuch as the fruit used was of inferior quality and condition, it was not capable of producing the 80 per cent. of the capacity of the distillery as required by law, and that therefore there was no breach of the distiller's bond, and that the plaintiff below was not entitled to recover. This brings us to a consideration of the question as to whether there is any provision in the internal revenue law by which a distiller may be relieved from the requirements of the statute which provides that he must produce 80 per cent. of the producing capacity as indicated by a survey of the distillery.

After an exhaustive investigation of the statutes in question, we fail to find anything to sustain the ruling of the court below. In the case of United States v. Singer, 82 U. S. 120, 21 L. Ed. 49, in discussing this phase of the question, among other things, the court uses the following language:

"The system thus adopted was designed to prevent the secret production of spirits and consequent evasion of the government tax, and it seems well suited to accomplish the purpose. It at least reduces the limits within which fraud can be practiced to 20 per cent. of the capacity of the distillery. * * * Every one is advised in advance of the amount he will be required to pay if he enters into the business of distilling spirits, and every distiller must know the producing capacity of his distillery. If he fail, under these circumstances, to produce the amount for which by the law he will in any event be taxed if he undertakes to distill at all, he is not entitled to much consideration."

In the case of Collector v. Beggs, 84 U. S. 189, 21 L. Ed. 624, Justice Strong, in referring to the liability of the distiller, among other things, says:

"In no case could he escape from liability to pay a tax on at least 80 per centum of what his distillery was estimated to be capable of producing. * * *"

Also, in the case of United States v. Ferrary, 93 U. S. 628, 23 L. Ed. 832, the court says:

" * * * The twentieth section of the act also enacts that the quantity of spirits returned, together with the deficiency assessed, shall in no case be less than 80 per cent. of the producing capacity of the distillery, as estimated under the former provisions of the act. Thus, a liability is imposed upon the distiller of a tax of 50 cents upon 80 per cent., at least, of the producing ca-

pacity of the distillery, and such capacity is ascertained and information of it is given to the distiller before he commences his manufacture."

And in the case of Weitzel v. Rabe, 103 U. S. 343, 26 L. Ed. 320, it is said:

"* * * Under the law the distiller must pay a tax equal to 80 per cent. of his estimated producing capacity, whether the spirits are actually produced or not. Consequently, to save himself from taxation beyond his actual production, he must keep his distillery running all the time within 20 per cent. of its full capacity."

Thus it will be seen that, under the provisions of the internal revenue law, the distiller is required to produce at least 80 per cent. of the producing capacity of his distillery, and before he begins the operation of his plant a copy of the survey of his distillery is delivered to him, which, among other things, contains the information that he is required to pay taxes, in any event, on 80 per cent. of the capacity of his distillery. Such being the law, if a distiller uses defective fruit or material from which he cannot produce 80 per cent. of the capacity of his distillery, he does so with full knowledge that he will be assessed on the basis of 80 per cent. of his producing capacity, notwithstanding he may fail to produce such amount, owing to the character of the material used in the product of the same.

It is contended that the distiller in this instance would be entitled to relief under the following provision of section 3309a:

"* * * The commissioner of internal revenue upon the production to him of satisfactory proof of the actual destruction, by accidental fire or other casualty, and without any fraud, collusion or negligence of the distiller of any spirits in process of manufacture or distillation, or before removal to the distillery warehouse, shall not assess the distiller for a deficiency in not producing eighty per centum of the producing capacity of his distillery as established by law when the deficiency is occasioned by such destruction, nor shall he, in such cases, assess the tax on the spirits so destroyed. * * *"

This provision can have no bearing on the case at bar, inasmuch as there was no destruction of spirits; there being simply a failure to produce the 80 per centum of the capacity of the distillery as fixed by the survey. The use of fruit of an inferior quality cannot be construed to be a casualty, and there is no pretense here that any spirits were destroyed, as contemplated by the foregoing provision.

It was insisted in the court below by counsel for the defendant that the decision of this court in the case of Authel H. Freeman v. United States (decided November term, 1907) 157 Fed. 195, 84 C. C. A. 643, was controlling in this case. In that case suit was instituted against Authel H. Freeman, a distiller, as principal, and the National Security Company, as surety, to recover the sum of $2,302.52 alleged to be due as taxes upon spirits deposited in the distillery warehouse of said Freeman, together with 5 per cent. penalty and interest from the 1st day of January, 1904. It was admitted that the packages of distilled spirits upon which the taxes were claimed were manufactured by the said Freeman and duly deposited in a bonded warehouse. It was also admitted that the warehouse in question was accidentally destroyed by fire without fraud, collusion, or negligence on the part of the distiller or his surety. A demurrer was interposed in the court below by

the plaintiff upon the ground that the answer was insufficient and did not set forth facts sufficient to constitute a legal defense. The demurrer was overruled, and judgment· was rendered in favor of the government for the amount sought to be recovered. This court held, in that case, that, inasmuch as it was admitted by counsel for the government that the spirits in question were accidentally destroyed by fire without any fraud, collusion, or negligence on the part of the plaintiff in error, the distiller, under the provision of section 3309a, as amended by Act March 1, 1879, c. 125, § 6, 20 Stat. 340, and Act May, 28, 1880, c. 108, § 8, 21 Stat. 147 (U. S. Comp. St. 1901, p. 2158), was entitled in that action to assert the right thus conferred as a defense to such action. However, in the case at bar no such contention is made, and there is nothing in the record to bring this case within the purview of the provisions of the statute which provides that, in cases of destruction by fire or other casualty, the distiller shall be relieved from assessment for a deficiency resulting from a failure to produce 80 per cent. of the producing capacity of his distillery.

If the record in this case showed that the stands containing the pomace were destroyed by fire or other casualty, then, in that event, the distiller and his bondsman would not be liable to assessment for the 80 per cent. of the producing capacity of the distillery; but inasmuch as the proof clearly shows that the fruit used by the distiller was converted into spirits and not destroyed, as contemplated by the provisions of the section hereinbefore referred to, the court is powerless to grant any relief to the defendant upon that ground.

While this is true, nevertheless there is another phase of this question which is entitled to serious consideration at our hands. While a brief was filed by counsel for the government, for some reason none was filed in behalf of the defendants in error. We are therefore without information as to all of the contentions of the defendants below; but, in this connection, we deem it our duty to consider the last proviso of section 3309a. The proviso reads as follows:

"Provided further, that no assessment shall be charged against any distiller of fruit for any failure to maintain the required capacity, unless the commissioner shall, within six months after his receipt of each monthly report, notify such distiller of such failure to maintain the required capacity."

This proviso, as appears from an inspection of the record, was not called to the attention of the court below. It is plain and explicit and clearly fixes a limitation upon the commissioner as to the extent of his power to make an assessment, to wit, that he must give notice to the distiller within six months after the receipt of each monthly report as to his failure to maintain the required capacity, and, in the event of failure to do so, he does not have the power to make the assessment in pursuance of the provisions of section 3309.

It appears from the record that the tax sought to be collected was claimed to be due on spirits produced as far back as August, 1900, and, among other things, it was found by the jury:

"That there was no evidence that the defendant had notice from the commissioner of the above-named deficiency until after the assessment was made, and the assessment was based upon the survey of the returns of the distillery."

The fixing of this limitation as to the time and manner in which the commissioner may make an assessment is a wise provision and was intended as a protection to brandy distillers. Brandy distilleries are only operated during the fruit season, which usually lasts from two to three months, and, being required to make monthly reports, it is but just that they should be notified, either while the distillery is in operation or at an early date thereafter, as to any failure to produce the amount of spirits required by the survey under which they operate. It was evidently the purpose of Congress to require the commissioner, in cases where he deemed it his duty to make an assessment, to act with promptness in notifying the distiller that he had failed to maintain the required capacity of his distillery. To make an assessment a year or two after the distiller had ceased operations would be to place the distiller at a great disadvantage, and in order that controversies of that kind might be speedily determined while the whole matter was fresh in the mind of the distiller, and that he might be able to furnish proof in cases where his fruit had been accidentally destroyed by fire or other casualty, it was provided that no assessment should be made until he had been given notice of the same.

When properly analyzed, the proviso heretofore referred to means that the commissioner shall not have power to make an assessment against a fruit distiller until he shall have given the distiller notice of his failure to maintain the required capacity, and that such notice must be given within six months after his receipt of the monthly report upon which the assessment is proposed to be made. Therefore, when it appears that an assessment was attempted to be made without first giving the distiller notice that he had failed to maintain the required capacity of his distillery, such assessment would be void; or, if it should appear that, although notice was given, but such notice was not given within six months after the receipt of the monthly report upon which it was based, such proposed assessment would be void.

It is not necessary to pass upon the proposition as to whether a tax assessment in every instance purports verity and is prima facie evidence that the tax is due, inasmuch as the finding of the jury shows that the commissioner did not give the notice required by the statute. He was without power to make an assessment in accordance with the provisions of section 3309, and the proposed assessment is therefore utterly void and without force.

For the reasons stated, it follows that the government was not entitled to a judgment in the court below upon the findings of fact by the jury. The judgment of the Circuit Court is affirmed.

Affirmed.